**Affirm and Opinion Filed July 15, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00199-CR

### WILSON ALEXANDER BENITEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 1
### Dallas County, Texas
### Trial Court Cause No. F-1142524-H

## OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Lang

Wilson Alexander Benitez appeals the trial court's judgment convicting him of aggravated robbery. The jury found Benitez guilty and that he used a deadly weapon during the commission of the offense. Also, the jury assessed his punishment at forty years of imprisonment and a $10,000 fine. Benitez raises three issues on appeal arguing: (1) the evidence is insufficient to prove his identity as the perpetrator of the offense; (2) the evidence is insufficient to prove his assaultive conduct occurred in the course of committing theft; and (3) the trial court erred when it overruled his hearsay objection, allowing the testimony relating to how the police established Ruiz had an alibi.

We conclude the evidence is sufficient to support Benitez's conviction. Also, we conclude any error in the admission of the evidence relating to how the police established Ruiz

had an alibi was rendered harmless when substantially the same evidence was admitted without objection. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Edna Clement was helping her daughter, Kaylie, get ready for school in the morning when there was a loud knock on the front door. She answered the door and saw a man holding a vase of flowers and a clipboard with her name at the top. The man pulled open the door to enter the house and Edna Clement saw a gun in the waistband of his pants. The man forced his way into the house and told Edna Clement that she was going to die.

The flowers fell to the ground and the vase shattered. The man attempted to secure a plastic zip tie around Edna Clement's neck, but she fought him, preventing him from doing so. When the man paused to check a text message on his phone, Edna Clement pushed and kicked him. Also, Edna Clement attempted to call 9-1-1 on her cell phone and to close the door, but the man opened the door and took her phone. Then, the man began hitting Edna Clement with his gun causing her to bleed "all over" and "[v]ery bad" pain. After she fell to the floor, Edna Clement pleaded for her life, but the man put the gun close to her chest and shot her. When Edna Clement asked the man why, he answered that her husband did something bad to him.

The man took Edna Clement's cell phone. Then, he went into the kitchen and took the home phone. He left the house through the front door. Edna Clement told her daughter to go to a neighbor's house and call the police, which she did. The police and paramedics arrived at the house and Edna Clement was taken to the hospital. Kaylie Clement told the police that the man left in a white Titan truck. At the house, the police found glass from the broken vase, a clipboard with a yellow notepad, a pen, an "overly large zip tie," a bullet, and a scarf. Also, Detective Bo Davenport contacted Edna Clement's husband, Tim Clement, and interviewed him at the police department. Tim Clement told Detective Davenport that a man named Juvenal Ruiz had a "beef"

with him because he had engaged in some flirting, kissing, and groping with Ruiz's girlfriend, Hortencia Vasquez, he had purchased some things for Vasquez, and Ruiz had seen him leaving Vasquez's apartment. Also, Tim Clement told the police that Vasquez knew about a large sum of money that he kept in a floor safe inside his home. However, the police learned that Ruiz had an alibi for the time of the offense through his employer, the GPS from the company vehicle, and a surveillance video from his place of employment.

The police obtained left thumb prints on the top two sheets of the yellow notepad. The thumb prints were matched to Benitez's concealed handgun license. Tim Clement identified Benitez as the boyfriend of a co-worker, Norma Morales. He also told the police that Morales was Vasquez's sister.

After obtaining an arrest and search warrant, the police arrested Benitez and searched his apartment. In Bentiez's apartment, the police found a pistol, multiple rifles, and a bag of large zip ties. The zip ties were the same brand as the one found at the crime scene. Also, Benitez's phone records were obtained by subpoena. These records showed a change in Benitez's call pattern on the day before and the day of the offense. In addition, the police determined that, on the morning of the offense, the cell tower closest to Benitez's phone was near the location of the offense. Benitez consented to a buccal swab for DNA testing. The DNA from the neck of the vase and scarf found at the crime scene was consistent with Benitez's DNA.

Benitez was indicted for aggravated robbery. The jury found Benitez guilty and that he used a deadly weapon during the commission of the offense. Also, the jury assessed his punishment at forty years of imprisonment and a $10,000 fine.

## II. SUFFICIENCY OF THE EVIDENCE

In issues one and two, Benitez argues the evidence is insufficient to prove his identity as the perpetrator of the offense and his assaultive conduct occurred in the course of committing

theft. Essentially, he claims the evidence shows that Ruiz committed the offense and the offense was one of vengeance with the sole intent to harm Edna Clement. The State responds there is sufficient evidence that Benitez committed the offense and that he formed the intent to commit theft during the assault.

### A. Standard of Review

When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). Appellate courts are required to determine whether any rational juror could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902 n.19.

An appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Merritt*, 368 S.W.3d at 525; *Brooks*, 323 S.W.3d at 899. Juries are permitted to make reasonable inferences from the evidence at trial, and circumstantial evidence is as probative as direct evidence in establishing the defendant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). Circumstantial evidence alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 15. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *Hooper*, 214 S.W.3d at 15.

An appellate court's duty is to ensure the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). All evidence, whether properly or

improperly admitted, will be considered when reviewing the sufficiency of the evidence. *See McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam); *Lockhart v. Nelson*, 488 U.S. 33, 41–42 (1988); *Jackson*, 443 U.S. at 319.

## B.  *Applicable Law*

A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of property.  TEX. PENAL CODE ANN. § 31.03(a)  Appropriation of property is unlawful if it is without the owner's effective consent.  TEX. PENAL CODE ANN. § 31.03(b)(1).  A person commits robbery if he intentionally, knowingly, or recklessly causes bodily injury to another, or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death while committing theft.  TEX. PENAL CODE ANN. § 29.02(a)(1) (West 2011).  Robbery is aggravated when the defendant causes serious bodily injury to another, or uses or exhibits a deadly weapon.  TEX. PENAL CODE ANN. § 29.03(a) (West 2011).  "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.  TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2013).  A firearm is a deadly weapon.  TEX. PENAL CODE ANN. § 1.07(a)(17)(A).

The State must prove beyond a reasonable doubt that the defendant is the person who committed the offense charged.  *See Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984); *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.).  Identity may be proved by direct evidence or circumstantial evidence, including DNA evidence, or reasonable inferences from such evidence.  *See Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2006, pet. denied).

The intent to commit theft can be formed either before or during the assault. *See Connor v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995) ("in order for a murder to qualify as capital murder under § 19.03(a)(2), the killer's intent to rob must be formed before or at the time of the murder."). A theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft. *Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002). Further, the inference of motive that arises when a theft immediately follows an assault is not negated by evidence of an alternative motive that a jury could rationally disregard. *Cooper*, 67 S.W.3d at 224.

### C.  Application of the Law to the Facts

First, Benitez claims the evidence demonstrated that the identity of the offender was actually Ruiz. Benitez contends the witnesses were unable to identify him as the person responsible and gave conflicting descriptions of the assailant, he took his daughter to school on the morning of the offense, and he drives a maroon Jeep Liberty. On the other hand, Ruiz was known to carry a clipboard with a yellow notepad, he made an unsettling call to Tim Clement, he worked for a landscape company that used white trucks, and the DNA profile was never compared to Ruiz. Further, Benitez contends Edna and Kaylie Clement claimed the offender attacked Edna Clement because of something her husband had done and Tim Clement had an extramarital relationship with Ruiz's girlfriend.

Although the witnesses did not identify Benitez, his fingerprints were on the yellow notepad found at the scene of the offense, his DNA profile was linked to the DNA found on the vase and scarf used by the assailant, and the zip ties found in his apartment were the same brand as those found at the Clements' residence. Further, Benitez's cell phone records showed early-morning calls on the day of the offense were made using cell phone towers near where the offense took place. In addition, although Benitez argues that the DNA profile was never

compared to Ruiz, the record shows that Ruiz's employer, GPS from his company vehicle, and surveillance video from his place of employment provided Ruiz with an alibi for the offense. Accordingly, we conclude there was sufficient evidence to prove that Benitez was the offender.

Second, Benitez claims the evidence shows that the offense was one of vengeance with the sole intent to harm Edna Clement, not to commit theft. He contends this is supported by the fact that the assailant told Edna Clement that she was going to die because her husband had done something bad to him. He also points to Kaylie Clement's belief that the assailant took the phones to prevent them from calling for help and her testimony that the assailant left the house after shooting her mother, before returning to take the phones. Further, Benitez points to Edna Clement's acknowledgement that her assailant did not demand money or property.

The record shows that Tim Clement was involved in an extramarital relationship with Vasquez and told her about a floor safe in his house that contained approximately $50,000. Benitez's girlfriend, Morales, was the sister of Vasquez and worked with both Tim Clement and Vasquez. The jury could have rationally inferred that Benitez had learned of the safe and had intended to steal the money in the floor safe. Also, Edna Clement testified that her assailant took her cell phone from her before he struck her with his gun and shot her. The intent to commit robbery can be formed either before or during the assault. *See Alvarado*, 912 S.W.2d at 207. Further, the theft of the phones occurred immediately after the assault of Edna Clement supporting an inference that the assault was intended to facilitate the theft. *See Cooper*, 67 S.W.3d at 224. Accordingly, we conclude the evidence is sufficient to support that Benitez's assaultive conduct occurred in the course of committing theft.

We conclude the evidence is sufficient to support Benitez's conviction for aggravated robbery. Issues one and two are decided against Benitez.

# III. HEARSAY OBJECTION

In issue three, Benitez argues the trial court erred when it overruled his hearsay objection, allowing testimony relating to how the police established Ruiz had an alibi. He maintains the video was not played for the jury nor was Ruiz's employer called as a witness. Further, he argues the admission of this testimony was harmful because the jury had ample evidence to believe that Ruiz was responsible for the offense. The State responds that Detective Davenport's statements were not hearsay because they were not offered to prove the truth of the statements, but to show what actions he took after receiving the information. Also, the State contends the complained-of testimony did not leave the jury with the inescapable conclusion that someone else was testifying through Detective Davenport. Further, the State maintains that Benitez was not harmed because the jury heard abundant evidence linking him to the offense.

## A. Standard of Review

An appellate court reviews the trial court's admission of evidence for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *De La Paz*, 279 S.W.3d at 343–44. Erroneously admitted evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). In other words, error in the admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *see also Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting any error was harmless in light of "very similar" evidence admitted without objection).

### B. Applicable Law

Texas Rule of Evidence 801(d) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Texas Rule of Evidence 802 provides that "[h]earsay is not admissible except as provided by statute or by these rules or by other rules prescribed pursuant to statutory authority." TEX. R. EVID. 802. However, "[i]nadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." TEX. R. EVID. 802. The hearsay doctrine, codified in Texas Rules of Evidence 801 and 802, is designed to exclude out-of-court statements offered for the truth of the matter asserted that pose any of the four "hearsay dangers" of faulty perception, faulty memory, accidental miscommunication, or insincerity. *Fischer v, State*, 252 S.W.3d 375, 378 (Tex. Crim. App. 2008).

### C. Application of the Law to the Facts

At trial, during the State's direct examination of Detective Davenport, the following exchange occurred regarding Ruiz's alibi, during which the defense raised an objection:

| | |
|---|---|
| Prosecutor: | What did you-all do with that information about Mr. Ruiz? |
| Davenport: | We—we wanted to talk to Mr. Ruiz. So we—we found Mr. Ruiz. We—we talked to him and through that investigation, we were able to alibi him out through his job that morning. So he—he was marked off the list. |
| Prosecutor: | And how were you able to simply alibi him out as a person— |
| Defense: | Objection. Hearsay, Your Honor. |
| Trial Court: | This question is overruled. Go ahead. |
| Davenport: | I'm sorry. |
| Prosecutor: | How were you able to rule out or alibi out Mr. Ruiz as the person who committed this aggravated robbery? |
| Davenport: | His boss and eye witnesses at his— |

Defense:        Judge, I think if he's going to say what the boss told him, that's hearsay on that issue.

Trial Court:    Overruled.

Prosecutor:     Well, Your Honor, it's for investigative purposes and in terms of eliminating suspects.

Trial Court:    It's overruled. Go ahead. You can answer.

. . . .

Davenport:      His boss and then also the vehicle that he was operating through his company has GPS, and we were able to get that GPS and then also surveillance video from the company showing him.

However, during cross-examination, defense counsel elicited the following testimony from Detective Davenport:

Defense:        [Ruiz] originally told you that he didn't get to work until after 8:20 that day because you-all went there to talk to him?

Davenport:      Right.

Defense:        And that changed later on?

Davenport:      Per the GPS and video, yes, sir.

Defense:        Well, the GPS of the—work vehicle that [Ruiz] was thought to have used that day?

Davenport:      That [Ruiz] was assigned to, yes, sir.

Also, during the State's re-direct examination of Detective Davenport the following occurred without objection:

Prosecutor:     Well, how was [Ruiz]—tell the jury how [Ruiz] was alibied?

Davenport:      He was on video that morning at his—at his company.

Accordingly, we conclude any error in the admission of the testimony relating to how the police established Ruiz had an alibi was rendered harmless when substantially the same evidence was admitted elsewhere without objection. *See Coble*, 330 S.W.3d at 282; *Mayes*, 816 S.W.2d at 88.

–10–

Issue three is decided against Benitez.

## IV. CONCLUSION

The evidence is sufficient to support Benitez's conviction.  Also, any error in the admission of the testimony relating to how the police established Ruiz had an alibi was rendered harmless when substantially the same evidence was admitted elsewhere without objection.

The trial court's judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130199F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILSON ALEXANDER BENITEZ,
Appellant

No. 05-13-00199-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F-1142524-H.
Opinion delivered by Justice Lang.   Justices
Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 15th day of July, 2014.