**Affirmed and Opinion Filed August 20, 2014**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01455-CR

### No. 05-12-01456-CR

**BRYAN BAUM, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause Nos. 2-12-213 & 2-12-214**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Evans
Opinion by Justice Bridges

On the Court's own motion, we withdraw our opinion and vacate our judgments of February 25, 2014. The following is now the opinion of the Court.

Appellant Bryan Michael Baum appeals from his convictions for retaliation (05-12-01455-CR) and harassment of a public servant (05-12-01456-CR). In five issues, appellant contends: (1) he did not have the requisite mental state to be found guilty of either of the offenses alleged and the jury should have been instructed as such; (2) the trial court erred in admitting State's Exhibit 2, a medical questionnaire, over his objections; (3) he was denied due process and exculpatory evidence by police destruction of the video of events constituting the offense of harassment of a public servant; (4) the evidence was legally insufficient to support the conviction

for harassment of a public servant; and (5) the evidence was legally insufficient to support the conviction for retaliation. We affirm.

**Background**

On the night of February 4, 2012, a private security company that worked at the Harbor on Lake Ray Hubbard called 911, indicating there was a parked vehicle that had two occupants inside with the car alarm repeatedly sounding on the vehicle. Officer Benton Brumit of the Rockwall Police Department testified he was dispatched to the Harbor and first met with the security company to get a better description of the vehicle and to determine its location. He then drove his marked patrol car to a parking spot in front of the En Fuego cigar shop.

Officer Brumit exited his vehicle and approached the suspect vehicle. He observed two people inside, a male on the driver's side and a female on the passenger side. The male was appellant and the female was his girlfriend, Denise.[1] Denise was "kind of hunkered down in the floorboard" between the dash and the passenger seat and appeared to be asleep.

Officer Brumit observed appellant attempting to insert his keys into the ignition of the vehicle and knocked on the driver's side window. Appellant rolled down the window after a couple of seconds. Officer Brumit then illuminated his flashlight and started talking to appellant. He called for officer assistance. Officer Philip Young, Officer Stephen Nagy and Sergeant Ray Fitzwater acted as cover officers for Officer Brumit.

When the other officers arrived, Officer Brumit asked appellant to step out of his car. Officer Brumit noticed that appellant's speech was "very slurred, almost mumble like." Officer Brumit further testified appellant had very red and bloodshot eyes with a glassy look about them and that he could smell the strong odor of an alcoholic beverage emitting from the car and appellant. From these factors, Officer Brumit believed appellant was intoxicated.

---

[1] At the time of trial, appellant had been married to Denise for three or four months.

–2–

Officer Brumit asked appellant for identification and was given an ID card, which had the name of Bryan Michael Baum and his date of birth. At that point, Officer Brumit placed appellant under arrest for public intoxication and placed handcuffs on appellant to lock his arms together behind his body. After patting him down, Officer Brumit placed appellant into the backseat of his patrol car.

Our review of the dash cam video shows that Officer Brumit then returned to the car to ask Denise some questions. When he asked Denise what appellant had to drink that night, she indicated two margaritas and a glass of wine.[2] While Officer Brumit was conducting the horizontal gaze nystagmus test on Denise,[3] the other officers heard a loud noise and observed appellant had leaned over in the vehicle and was kicking at the metal grate that separated the inside of the car from the actual window. The officers then got appellant out of the car and placed a hobble around his legs.

Officer Brumit then left the scene to transfer appellant to the jail. Officer Brumit testified that, during the trip, appellant "became very agitated, became very angry, began using foul language, cursing at [him], saying specific things to [him], things in a manner that some people don't normally–[he] would say don't normally hear on a day-to-day basis." For example, while en-route the jail, appellant called Officer Brumit a "punk-assed cunt and bitch" and made the following remarks to Officer Brumit:

- "I'll kill your ass in 30 seconds."

- "I'm gonna kill you, bitch."

- "I'm gonna kill you because you're doing this to me for no reason."

- "I'm gonna kill you."

[2] Denise indicated she had two glasses of wine.

[3] The record reflects Denise was cited for public intoxication and was transferred to jail by another officer.

• "I'm gonna kill you in your sleep if my old lady's in that car."

Officer Brumit drove his car into the sally port area connected to the main building of the jail. Officer Chris Judge of the Rockwall County Sheriff's Office testified he was one of the detention officers that came out in the sally port to Officer Brumit's car to help bring appellant into the jail. Officer Brumit testified that, while at the jail, appellant continued to curse, yell and was hostile toward the other officers.

Officer Jacob Ruiz, another detention officer, was called into the sally port that night to assist with a "combative inmate." Officer Ruiz had prepared for appellant's arrival by getting the restraint chair ready. Officer Ruiz testified appellant's speech was slurred at times and he "was threatening everybody that he was gonna kill [them], that [they] were gonna be the last person that he saw because [] he was gonna kill [them]." Officer Ruiz further testified appellant stated: "I'm going to F-ing kill you. You SOBs." Officer Ruiz explained it was obvious appellant was impaired.

Officer Judge testified, "[W]e had to physically lift [appellant] up out of the squad [car] because he refused to come out." Appellant was placed in a restraint chair that kept him in one position. Officer Brumit explained that, while the detention officers were pulling appellant into the jail in the chair, appellant "actually spit on two detention officers." Officer Judge stated he observed as appellant reared his head back and brought his head forward to spit. Officer Judge explained he "stopped in [his] tracks" and took a step back. When he did, the spit hit his shoulder and then bounced over and hit the officer behind him, Officer Ruiz.

Officer Ruiz recalled that appellant's spit hit Officer Judge in the shoulder and hit him in the head. Officer Ruiz explained he saw the spit come out of appellant's mouth and felt like it was intentional because of the way he cleared his throat in order to spit. Officer Judge then put a

–4–

spit mask on appellant. After placing it on his head, appellant tried to spit a couple of times, but was unsuccessful.

A Rockwall County grand jury indicted appellant for the offenses of retaliation and harassment of a public servant. The trial court called both cases to trial, and the jury returned a guilty verdict in both. During the punishment phase of trial, the State presented its notice of intent to seek enhancement due to a prior conviction. Appellant received a prior final conviction for the felony offense of assault on a public servant. The trial court ruled the prior conviction was applicable to both causes. In addition to his prior conviction for assault on a public servant, appellant was also previously convicted of the offenses of evading arrest, unlawful possession of a controlled substance, to wit: cocaine, and driving while his license was suspended. In the cases before us, punishment was assessed at 20 years' imprisonment for each offense to run concurrently.

## Analysis

In five issues, appellant challenges his convictions, contending: (1) he did not have the requisite mental state to be found guilty of either of the offenses alleged and the jury should have been instructed as such; (2) the trial court erred in admitting State's Exhibit 2, a medical questionnaire, over his objections; (3) he was denied due process and exculpatory evidence by police destruction of the video of events constituting the offense of harassment of a public servant; (4) the evidence was legally insufficient to support the conviction for harassment of a public servant; and (5) the evidence was legally insufficient to support the conviction for retaliation.

### *Jury Charge*

In his first issue, appellant argues he did not have the requisite mental state to be found guilty of either of the offenses, and the jury should have been instructed on this issue.

Specifically, appellant contends his diabetic condition was the cause of his behavior in question and, therefore, raised the issue of whether his acts were voluntary.

In *Almanza*, the court of criminal appeals set out the basic framework for analysis on appeal to alleged errors in the jury charge. *Almanza v. State*, 686 S.W.2d 157, 171-74 (Tex. Crim. App. 1984). This framework is not a court-made rule, but based on the court of criminal appeals' interpretation of article 36.19 of the code of criminal procedure, which the Court construed as separately containing the harm standards for both "fundamental error and ordinary reversible error" in jury charges. *See Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998) (en banc) (citing *Almanza*, 686 S.W.2d at 171).

However, neither harm standard set out in article 36.19 as construed by *Almanza* applies unless an appellate court first finds "error" in the jury charge. *Posey*, 966 S.W.2d at 60. Neither article 36.19 nor *Almanza* have any application in determining whether there is "error" in the jury charge. *See id.* This is because neither harm standard applies unless the record first shows that any requirement of various statutory provisions referenced in article 36.19 "has been disregarded." *See id.* The primary statutory provision referenced in article 36.19 that could apply or be "disregarded" in cases like this is article 36.14 of the code of criminal procedure.

Article 36.14 states that "the judge shall before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case." The trial judge has the duty to instruct the jury on the law applicable to the case even if defense counsel fails to object to inclusions or exclusions in the charge. *See Taylor v. State*, 332 S.W.3d 483, 487 (Tex. Crim. App. 2011). Furthermore, the trial judge is "ultimately responsible for the accuracy of the jury's charge and accompanying instructions." *See Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). But article 36.14 imposes no duty on a trial judge to instruct the jury *sua sponte* on unrequested defensive

issues, because an unrequested defensive issue is not the law "applicable to the case." *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (citing *Posey*, 966 S.W.2d at 62).

In the case before us, the record does not include a request by appellant that a voluntariness defense be included in the charge. Furthermore, the record reflects, and appellant concedes in his brief, that defense counsel failed to object to the jury charge. Thus, the question in this case is whether article 36.14 imposed a duty on the trial court to *sua sponte* instruct the jury on unrequested defensive issues. *See Posey*, 966 S.W.2d at 62. However, the court of criminal appeals has already concluded a defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection. *Vega*, 394 S.W.3d at 519. Appellant has, therefore, procedurally defaulted any such complaint. *See id.* (citing *Posey*, 966 S.W.2d at 61). We overrule his first issue.

### *Medical Questionnaire*

In his second issue, appellant complains the trial court erred in admitting, over his objections to State's Exhibit 2, a sheriff's office medical questionnaire used for all book-ins. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). The trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

The State offered State's Exhibit 2 through Pam Williams, a nurse at the Rockwall County Jail. State's Exhibit 2 was a medical questionnaire used at the time of appellant's book-in. Defense counsel objected to the exhibit on the grounds "there's a lack of foundation, a lack of authenticity for this document. The document contains hearsay." The defense also objected that State's Exhibit 2 "violates [appellant's] constitutional rights in that [he] would not have an

opportunity to confront Alicia Sumner about the veracity of the statements that she placed into the document." The State responded, indicating the exhibit "comes in both under the sheriff's business records hearsay exception as well as the medical diagnosis as an exception for hearsay." The trial court admitted State's Exhibit 2.

On appeal, appellant first contends State's Exhibit 2 was not properly authenticated. Rule 901 provides for the requirement of authentication or identification as a condition precedent to admissibility. *See* TEX. R. EVID. 901(a). Appellant contends the State failed to introduce the questionnaire as a business record and, therefore, the medical questionnaire was not properly authenticated. However, we need not reach whether the questionnaire was authenticated as a business record, because public records or reports are examples of authentication or identification conforming with the requirements of rule 901. *See id.* at 901(b)(7). Public records or reports include "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." *Id.*

The Texas administrative code requires, upon intake, a file on each inmate shall be established. 37 TEX. ADMIN. CODE §265.4(a). "Upon intake, a medical record shall be established and shall be kept separate." *See id.* at §265.4(b). Furthermore, the code mandates that the sheriff or operator of the jail shall maintain a medical record on each inmate. 37 TEX. ADMIN. CODE §269.1(2)(H). Appellant contends the questionnaire "was not shown to have been a [public record] and was shown to have been in the custody of a private agency which provided medical services to inmates." To the contrary, in the trial court, the following relevant testimony of Pam Williams transpired:

> Q. This record, State's Exhibit 2, is this the type of record that is kept on every inmate within the Sheriff's Department?
>
> A. Yes, ma'am.

–8–

Q. And it's kept in the normal course of business for the Rockwall County Sheriff?

A. That's kept in the medical office.

Q. Okay. It's actually kept in the medical office. So are you the custodian of records for these medical questionnaires?

A. Yes, ma'am. They're kept in the file cabinet there.

Q. And the sheriff keeps these types of records in the medical office on a day-to-day, week-to-week, month-to-month, year-to-year basis on everyone that comes through those doors –

A. Yes, ma'am.

Q. -- in custody.

A. Yes, ma'am, that's correct.

Q. When the -- who was the person that filled out this questionnaire?

A. The book-in officer.

Q. Okay. So the officer that's taking all the defendant's information is filling out this medical questionnaire at the time of book-in.

A. Correct.

Q. And the information that the detention officer uses to fill out this questionnaire, is that taken from the defendant themselves?

A. Supposedly, yes, ma'am.

Q. Okay. And then State's Exhibit 2, is that a copy of the original that is kept in the medical office at the jail?

A. Yes, ma'am. That is the original. The copy – there's not a copy that –

Q. This is the original –

A. Yes.

Based on the testimony and law before us, we conclude the trial court did not abuse its discretion in determining State's Exhibit 2 had been properly authenticated. *See* TEX. R. EVID. 901; *McShane*, 239 S.W.3d at 234.

Appellant next contends State's Exhibit 2 did not fall within either of the hearsay exceptions cited to the trial court by the State. We disagree. Certain written reports that would normally be excluded as hearsay are admissible as exceptions to the hearsay rule. For example, this exception applies to:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth. . . matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel. . . .

TEX. R. EVID. 803(8)(B). As this Court has already noted, not all law enforcement reports are inadmissible. *See Calhoun v. State*, Nos. 05-94-00672-CR & 05-94-00673-CR, 1997 WL 53359, at *2 (Tex. App.—Dallas Feb. 11, 1997, no pet.) (citing *Cole v. State*, 839 S.W.2d 798, 804-05, 809-10 (Tex. Crim. App. 1992) (op. on reh'g)). Documents that record routine, objective observations and are made as part of the preparing official's or agency's everyday functions do not qualify as "matters observed by police officers and other law enforcement personnel." *See Cole*, 839 S.W.2d at 804.

In *Calhoun*, we determined that a booking information sheet was a "record, report, or data compilation setting forth matters which the recording law enforcement personnel has a duty imposed by law to record." *See Calhoun*, 1997 WL 53359, at *3. Likewise, we conclude the medical questionnaire offered as State's Exhibit 2 set forth matters which the recording law enforcement personnel had a duty to record. *See id.*; 37 TEX. ADMIN. CODE §§265.4(a-b), 269.1(2)(H). Like in *Calhoun*, the medical questionnaire was not prepared for purposes of specific litigation or as part of the observation and investigation of a particular crime. *See Calhoun*, 1997 WL 53359, at 3. Rather, the medical questionnaire provided law enforcement

–10–

personnel with a mechanism for recording routine data that they are required to record upon the arrestee's intake. *See id.* We, therefore, conclude State's Exhibit 2 qualifies as an exception to the hearsay rule, and the trial court did not err in admitting the medical questionnaire. *See* TEX. R. EVID. 803(8)(B); *McShane*, 239 S.W.3d at 234.

In reaching this conclusion, we reject appellant's argument that, because Williams was not employed by the sheriff's office, she was not qualified to sponsor the sheriff's medical intake questionnaire as a business record, relying on *Powell v. Vavro, McDonald, and Associates*, 136 S.W.3d 762, 765 (Tex. App.—Dallas 2004, no pet. In *Powell*, a panel of this Court held that a particular witness did not lay the proper predicate for the admission of the documents at issue because he was not a qualified witness to testify about the record keeping of another entity. *Id. Powell* does not stand for the proposition that a non-employee of the business whose records are at issue can *never* lay the proper predicate for admissibility. *See id.*; *Asshauer v. Glimcher Realty Trust*, 228 S.W.3d 922, 926-27 (Tex. App.—Dallas 2007, no pet.) (admission of affidavit proper where affiant stated basis of personal knowledge was review of "client's business records."). We overrule appellant's second issue.[4]

### *Destruction of Video Evidence*

In his third issue, appellant contends he was denied due process and exculpatory evidence due to the destruction of the video of events constituting the alleged offense of harassment of a public servant. Officer Brumit testified that, although there would have been a video of what transpired with appellant in the sally port area, he did not request that video. He explained he did not request the video, because he thought the sheriff would automatically pull the video due to the charges being filed against appellant. Officer Brumit later discovered he would have had to

---

[4] Although defense counsel objected to State's Exhibit 2 at trial, stating it "violates [appellant's] constitutional rights in that [he] would not have an opportunity to confront Alicia Sumner about the veracity of the statements that she placed into the document," no such argument is made on appeal. Therefore, we do not address it here. *See* TEX. R. APP. P. 47.1.

request the video in order to preserve it. He further indicated there is a "30-day recycle on that system," meaning that if the video is not pulled within 30 days, it will be recorded over.

Because the video from the sally port area was not preserved, appellant argues he was denied due process and exculpatory evidence. However, an appellant must present to the trial court a timely, specific objection and obtain an adverse ruling to preserve for appeal his complaints concerning a violation of his due process rights. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Alexander v. State*, 137 S.W.3d 127, 130-31 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). It is axiomatic that error is forfeited when the complaint on appeal differs from the complaint at trial. *See McGinn v. State*, 961 S.W.2d 161, 166 (Tex. Crim. App. 1998). Because appellant never complained to the trial court that his rights were violated by the State's failure to preserve and serve the video of the sally port area, he has forfeited any error premised on these grounds. *See id.*; *Alexander*, 137 S.W.3d at 131. We, therefore, overrule his third issue.

### Sufficiency–Harassment of a Public Servant

In his fourth issue, appellant complains the evidence is legally insufficient to support the conviction for harassment of a public servant. In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894-95 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We are required to defer to the factfinder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326. The factfinder may choose to believe or disbelieve all or any part of any witness's testimony. *Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.—Dallas 2003, no pet.). Juries are permitted to make reasonable inferences from

the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

A person commits harassment of a public servant if, with the intent to assault, harass, or alarm, he causes the person the actor knows to be a public servant to contact the saliva of the actor while the public servant is lawfully discharging an official duty or in retaliation or on account of an exercise of the public servant's official power or performance of an official duty. TEX. PENAL CODE ANN. §22.11(a)(2). Officer Judge testified as follows:

> Q. So you're going from–with this particular defendant, you put him in the chair, and then you're gonna roll him into that area where he's placed in front of a supervisor?
>
> A. Yes, ma'am.
>
> Q. Okay. And with this particular person, what happened as you were rolling him into the jail?
>
> A. Well, one of the officers [was] rolling him backwards into the jail, and I was the first officer following the chair. And as we're going through the sally–the sally port vestibule to go inside the jail, I saw the individual rear his head back in a spitting motion and then come forward. And I saw him spit, and I stopped in my tracks, and I took a step back. When I did, it hit my shoulder and then bounced over and hit the officer behind me.
>
> Q. Officer –
>
> A. Ruiz.
>
> Q. Who was the officer behind you?
>
> A. Officer Ruiz.
>
> Q. So it hit you in the shoulder, and then Officer Ruiz was also hit.
>
> A. Yes, ma'am.

Officer Judge further testified that appellant "spit directly at [him]... as if he were trying to hit [him]."

Officer Ruiz corroborated Officer Judge's testimony, stating that, as the officers brought appellant into the sally port area, "[h]e spit, and it hit Officer Judge in the shoulder, and it also hit [him] in the head." He explained that all of the officers that dealt with appellant that night were in uniform. Officer Ruiz also testified he saw the spit come out of appellant's mouth after appellant "had brought his head back in a spitting motion and then just spit." Officer Ruiz opined appellant intentionally spit at the officers because of the "way he cleared his throat in order to spit." Officer Brumit added that "[w]hile they were pulling [appellant] into the jail in the chair, [he] actually spit on two detention officers."

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to convict appellant of harassment of a public servant. *See Jackson*, 443 U.S. at 319. We overrule appellant's fourth issue.

*Sufficiency–Retaliation*

In his fifth and final issue, appellant argues the evidence is legally insufficient to support his retaliation conviction. A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant. TEX. PENAL CODE ANN. §36.06(a)(1)(A). A central purpose of the retaliation statute is to encourage a specified class of citizens, which includes public servants, to perform vital public duties without fear of retribution. *See Cada v. State*, 334 S.W.3d 766, 771 (Tex. Crim. App. 2011). Retaliatory intent may be established contemporaneously with the public servant's actions. *See Wiggins v. State*, 255 S.W.3d 766, 773 (Tex. App.—Texarkana 2008, no pet.).

We first note that, under the evidence before us, Officer Brumit qualifies as a "public servant." A "public servant" includes a person employed as an agent of government. *See* TEX. PENAL CODE ANN. §1.07(41)(A). The record reflects Officer Brumit was employed by the

Rockwall Police Department on the date of the incident in question and was dispatched to the Harbor in response to a "suspicious persons call."

After appellant was arrested for public intoxication and during his transfer to the jail, the record further reflects appellant used a flood of profanities and threats that would not have occurred if not for Officer Brumit's acts done while acting as a public servant. Specifically, our review of the dash camera video demonstrates appellant made the following threats to Officer Brumit:

- "I'll kill your ass in 30 seconds."

- "I'm gonna kill you, bitch."

- "I'm gonna kill you because you're doing this to me for no reason."

- "I'm gonna kill you."

- "I'm gonna kill you in your sleep if my old lady's in that car."

Our sister court has already determined there is retaliatory intent in a situation analogous to the one before us, that is when "an officer arrests a defendant; on the way to the station, the defendant unleashes a flood of profanities, threats, and threatening behaviors that would not have happened if not for the officer's acts done while acting as a public servant." *Wiggins*, 255 S.W.3d at 773 (citing *Stafford v. State*, 948 S.W.2d 921, 923 (Tex. App.—Texarkana 1997, pet. ref'd)).

Therefore, viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to convict appellant of retaliation. *See Jackson*, 443 U.S. at 319. We overrule appellant's fifth issue.

–15–

**Conclusion**

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

121455F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BRYAN BAUM, Appellant

No. 05-12-01455-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 2-12-213.
Opinion delivered by Justice Bridges.
Justices Moseley and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered August 20, 2014



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

BRYAN BAUM, Appellant

No. 05-12-01456-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 2-12-213.
Opinion delivered by Justice Bridges.
Justices Moseley and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered August 20, 2014