

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00117-CR

_____

BEN LANG WIGGINS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Fifth Judicial District Court
Cass County, Texas
Trial Court No. 2006F00177

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Ben Lang Wiggins appeals his conviction for retaliation. Due to a prior felony conviction, Wiggins received an enhanced sentence of eleven years. He raises three points of error: (1) failure to instruct the jury on a lesser included offense; (2) failure to properly identify Wiggins; and (3) insufficiency of the evidence of retributory intent. After reviewing the record, applicable law, and oral argument of the parties, we affirm the judgment of the trial court.

## 1. Factual and Procedural Background

Texas Department of Public Safety Trooper Eric White was on duty in his patrol car at an intersection of County Road 4659 and Texas Highway 77 East around 2:00 a.m. May 13, 2006, when he saw a car driven by Wiggins traveling at a high rate of speed. Wiggins missed the turn and locked his brakes, sliding past the intersection about 100 feet. Wiggins put the car in reverse, "squalled" the tires and backed up past the intersection. He again missed the turn, "squalled" his tires, and finally steered his vehicle south on the county road.

White activated his overhead lights and followed Wiggins, as White believed the driver to be operating the vehicle in a reckless manner. When White activated his lights, Wiggins "immediately floored it." Reaching speeds of ninety miles per hour, White chased Wiggins for about a mile or mile and a half before Wiggins finally stopped. White initiated a felony stop procedure: White approached Wiggins' vehicle with his weapon drawn. Wiggins ignored White's commands to get on the ground, continuing to walk toward White's car. A videotape and audiotape recording

2

of the traffic stop is in the record. Wiggins finally complied with White's commands and was handcuffed.

White determined Wiggins had urinated and "crapped" in his pants, and had a very strong odor of alcohol. He arrested Wiggins for evading arrest and driving while intoxicated. A tow truck was called for Wiggins' vehicle; the tow truck operator stated that he knew Wiggins from "way back," and requested permission to go to the squad car and say "hi." White agreed; as the tow truck operator left the car, he asked Wiggins if he needed anything. Wiggins replied, "I need you to take care of this pig." When White began to take Wiggins to the station, Wiggins complained that the handcuffs were too tight. White testified in court, and can be heard on the recording to say that he only put the handcuffs on the second "click." White refused to loosen the handcuffs.

When White was checking the handcuffs, he was alarmed by Wiggins' statement that, if Wiggins wanted to hurt White, he would already have done so. Over the course of the ride to the sheriff's office, Wiggins became uncontrollable: cursing, trying to come over the car's center console to the extent that White had to drive with one hand and keep the other at Wiggins' collar to restrain him. White testified they drove "several miles" with him having to hold off Wiggins, while traffic was approaching. On the videotape admitted at trial, the jury heard Wiggins angrily cursing White and saw that White's vehicle occasionally swerved on the road. White testified this was due to him restraining Wiggins with one hand. At one point, White called for another patrol car, with a cage. White testified that, at one point while he was restraining Wiggins, White's hand slipped to Wiggins'

3

face; when White pulled his hand back, he heard Wiggins' teeth come together. White testified he believed Wiggins was trying to bite him. On the videotape, Wiggins stated, "I'll gnaw that [expletive deleted] off!"

Based on this conduct, Wiggins was indicted for retaliation by threatening to harm a public servant, White, by attempting to bite White's hand, "in retaliation or on account of the service of Eric White as a public servant."

2.    **Issues Raised on Appeal**

      A.    **Requested Jury Instruction of Assault of a Public Servant**

Wiggins' first point of error claims the trial court erred in not instructing the jury on the lesser included offense of assault on a public servant.[1] To determine whether a charge on a lesser included offense should be given, we apply a two-step test. The first step is to decide whether the offense is a lesser included offense of the offense charged. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006); *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007); *Mathis v. State*, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002). The second step of the test requires us to evaluate the evidence to determine whether there is some evidence that would permit a jury rationally to find that the defendant is guilty only of the lesser offense. *Mathis*, 67 S.W.3d at 925; *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000). Further, the evidence must establish the lesser included

_____

[1]Assault on a public servant and retaliation are both third-degree felonies. TEX. PENAL CODE ANN. § 22.01(b), § 36.06 (Vernon Supp. 2007).

4

offense as a valid rational alternative to the charged offense. *Wesbrook*, 29 S.W.3d at 113 (citing *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997)).

Wiggins' trial counsel requested a lesser included offense of assault and specifically cited to Section 22.01(a)(1) and (2) of the Texas Penal Code (assault causing bodily injury and assault by threat, respectively). The State cited *Moore v. State*, 143 S.W.3d 305 (Tex. App.—Waco 2004, pet. ref'd), which held that assault by threat (Section 22.01(a)(2)) is not a lesser included offense to retaliation because (a)(2) requires the threat of harm be imminent. *Id.* at 316. The State also cited *Helleson v. State*, 5 S.W.3d 393 (Tex. App.—Fort Worth 1999, pet ref'd). The trial court denied the requested lesser included instruction, citing *Moore* and *Helleson*. Trial counsel then asked for an instruction for a lesser included offense of assault under Section 22.01(a)(3), assault by causing physical contact which could be construed as offensive or provocative. The trial court denied, saying no contact was raised by the evidence, the evidence showed attempts to bite, but no actual biting.

Assault on a public servant specifically refers to Section 22.01(a)(1):

> An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against: a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant.

TEX. PENAL CODE ANN. § 22.01(b). Wiggins was indicted for retaliation by threatening to harm White, as opposed to physically harming him. While Section 22.01(a)(1) does not therefore apply,

5

Wiggins argued to the trial court that subsection (a)(2) did; that statute criminalizes "assault by threat."[2]

Assault by threat requires a threat of "imminent bodily injury." Retaliation may be committed when one threatens to harm another by an unlawful act in retaliation for or on account of another's service or status as a public servant. TEX. PENAL CODE ANN. § 36.06. The offense of retaliation does not necessitate the threatened harm be imminent; therefore, the elements of assault by threat require proof of more facts than does retaliation. Consequently, assault by threat is not a lesser included offense of retaliation. *Moore*, 143 S.W.3d at 316; *Helleson*, 5 S.W.3d at 396;[3] *see* TEX. CODE CRIM. PROC. ANN. art. 37.09. We find the trial court correctly denied the request for the instruction, and we overrule this point of error.

---

[2]"A person commits an offense if the person . . . intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse . . . ." TEX. PENAL CODE ANN. § 22.01(a)(2).

[3]"Because the offense of retaliation does not require that the threat to harm in retaliation for the victim's public service be imminent, the elements of assault by threat and terroristic threat are not included within the proof necessary to establish the offense of retaliation. *Compare* TEX. PENAL CODE ANN. § 36.06 *with* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.07(a)(2) [(Vernon Supp. 2007)]; *see also Coward* [*v. State*, 931 S.W.2d 386, 389 (Tex. App.—Houston [14th Dist.] 1996, no pet.)]; *Davis v. State*, 890 S.W.2d 489, 492 (Tex. App.—Eastland 1994, no pet.). We therefore conclude that assault by threat and terroristic threat are not lesser included offenses of retaliation and the trial court did not err by denying the requested charges." *Helleson*, 5 S.W.3d at 396.

<u>      </u>**B.** **Identification of Wiggins**

Wiggins' next point of error claims there was legally[4] and factually[5] insufficient evidence

to identify him as the person who committed this offense.

Identification of the defendant as the person who committed the offense charged is part of

the State's burden of proof beyond a reasonable doubt. *Miller v. State*, 667 S.W.2d 773, 775 (Tex.

Crim. App. 1984); *see Rickman v. State*, 677 S.W.2d 271, 273 (Tex. App.—Fort Worth 1984, pet.

ref'd). When a defendant contests the identity element of the offense, we are mindful that identity

may be proven by direct evidence, circumstantial evidence, or even inferences. *Roberson v. State*,

16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd). Although a direct in-court identification

is the preferred procedure, where the circumstances do not indicate the likelihood of confusion, that

type of identification is not required. *Hime v. State*, 998 S.W.2d 893, 896 (Tex. App.—Houston

[14th Dist.] 1999, pet. ref'd). If there is no in-court identification of the perpetrator's identity elicited

---

[4]We review the legal sufficiency of the evidence considering all the evidence in the light most favorable to the verdict—could a rational jury have found the essential elements of aggravated robbery, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

[5]When reviewing the evidence for factual sufficiency, we review all the evidence admitted at trial in a neutral light. The evidence supporting a jury's verdict may be factually insufficient if the evidence supporting the jury's verdict is so weak that the jury's judgment appears clearly wrong or manifestly unjust or if the evidence supporting the judgment of conviction is outweighed by the great weight and preponderance of the evidence. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *McDowell v. State*, 235 S.W.3d 294, 296 (Tex. App.—Texarkana 2007, no pet.). This factual sufficiency standard requires that we reach "a high level of skepticism" before we may reverse a jury's verdict based on factual insufficiency. *Roberts*, 220 S.W.3d at 524.

from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused. *Clark v. State*, 47 S.W.3d 211, 214–15 (Tex. App.—Beaumont 2001, no pet.). The sufficiency of the evidence is then determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *See Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). The test for sufficiency of an in-court identification is whether we can conclude "from a totality of the circumstances the jury was adequately apprised that the witnesses were referring to appellant." *See Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. [Panel Op.] 1981). Further, the absence of an in-court identification is merely a factor for the jury to consider in assessing the weight and credibility of the witnesses' testimony. *See Meeks v. State*, 897 S.W.2d 950, 955 (Tex. App.—Fort Worth 1995, no pet.).

As mentioned above, the jury saw a videotape of Trooper White stopping Wiggins' vehicle and interviewing him on camera in front of White's squad car. Wiggins' image is on the screen for approximately two minutes. The jury could compare the person in the videotape with the person introduced by the court as "Mr. Wiggins" in deciding if he was the same person. The use of a photographic representation of a person's image has historically been sufficient to identify the person. *See Flowers v. State*, 220 S.W.3d 919, 925 (Tex. Crim. App. 2007) (trial court could use picture to compare to the person standing before him); *Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1987) ("it has long been an accepted practice to identify the accused by means of a photograph"); *Reynolds v. State*, 227 S.W.3d 355, 362 (Tex. App.—Texarkana 2007, no pet.). We believe that this

8

videotape evidence alone was sufficient to allow the jury to rationally conclude that the person arrested on that evening was the same person in court for trial. Additionally, there were several other events during the trial that could have supplemented that identification.

Despite the absence of a positive identification, where the totality of circumstances show no substantial likelihood of misidentification, the testimony is considered reliable. *See Cooks v. State*, 844 S.W.2d 697, 731 (Tex. Crim. App. 1992); *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988). In *Purkey v. State*, 656 S.W.2d 519, 520 (Tex. App.—Beaumont 1983, pet. ref'd), the defendant was never formally identified in open court, but the witnesses merely referred to him by name. The defendant contended that, without an in-court identification, such as pointing at him or describing his attire, the evidence was insufficient to establish his identity as one and the same as that of the alleged criminal. *Id*.

In *Janak*, we held that, where the arresting officer did not recognize Janak in the courtroom at trial, but made several statements referring to acts of "the defendant" throughout his testimony, there was sufficient evidence to sustain the conviction for driving while intoxicated. *Janak v. State*, 826 S.W.2d 803, 804 (Tex. App.—Texarkana 1992, no pet.).

There were several occasions throughout voir dire and trial where the State and defense counsel made reference to Wiggins as the defendant. For example, in voir dire, the State asked if veniremembers knew witnesses or attorneys on the case, and if anyone knew "the defendant, Ben Wiggins." On re-direct examination of Trooper White, the State asked White, "the defendant was

9

Ben Wiggins that tried to do this is that correct?" Defense counsel, during cross-examination, referred to Wiggins as "my client." The trial court stated to the jury panel, "Seated over here to my left is Mr. Bryan Simmons. Mr. Simmons is an attorney . . . representing Mr. Wiggins"; the defense opening argument where counsel said, "[T]hey want to send my client, Ben Wiggins, to the penitentiary"; in voir dire, defense counsel told the jury, "It's the burden of proof which the State must show in order to convict Mr. Wiggins over there."

Finding no controverting evidence in the record, we find there was legally and factually sufficient evidence to support the jury's conclusion that Wiggins was the man on trial in this cause. We overrule this point of error. *See Miller*, 667 S.W.2d at 775 n.1 (finding uncontroverted identification evidence sufficient under totality of circumstances).

### C. Legal and Factual Sufficiency of Retributory Intent

The offense of retaliation is committed when one intentionally or knowingly harms or threatens to harm another by an unlawful act: (1) in retaliation for or on account of the service or status of another as a: (A) public servant. TEX. PENAL CODE ANN. § 36.06(a)(1)(A). Wiggins argues that the evidence is insufficient to demonstrate that he had retributory intent in the assault. Specifically, Wiggins argues that such retaliatory intent must arise from an act previously done by the public servant rather than being developed contemporaneously or during the same transaction with the public servant's actions.

10

Wiggins relies on two cases, the first of which is *In re M.M.R.* M.M.R. was fighting with another juvenile in a detention facility; a guard got in the way trying to restrain M.M.R., and M.M.R. struck the guard. The El Paso court found the

> evidence . . . .show[ed] appellant assaulted Hamilton [the guard], not for the purpose of retaliating against Hamilton for restraining him, but in order to escape and continue his assault against T.R. Hamilton specifically testified that appellant's entire focus was on T.R. and that appellant struck Hamilton in his effort to get away and fight with T.R. We find the evidence is legally insufficient to support the trial court's finding.

*In re M.M.R.*, 932 S.W.2d 112, 115 (Tex. App.—El Paso 1996, no pet.).

The other case on which Wiggins relies is *Riley*. Relying heavily on the reasoning in *M.M.R.*, that court found that, where Riley refused to acknowledge two guards' commands to stop, and instead kept walking, and ultimately got in an altercation with and punched a guard, it "is not enough that the State demonstrate a public servant was harmed while lawfully discharging his official duties. It must prove the harm inflicted resulted from a retributive attack for duties already performed. We conclude that, in this case, there is no evidence supporting that retributory element." *Riley v. State*, 965 S.W.2d 1, 2 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

This Court has previously authorized the retaliatory intent to be established contemporaneously with the public servant's actions. In *Stafford*, we affirmed a retaliation conviction where, after he was arrested, Stafford

> began a running diatribe in which he said that the officer worked for the CIA and was out to get him, and that he (Stafford) was going to kill [the arresting officer] before you can get me. And while I'm at it, I'm going to kill your wife, I'm going to kill your

11

kids, I'm going to kill your chief. We already have people lined up to take out the city council. And while I'm at it, I'm going to kill all Jews and niggers in the City of Longview. . . . I'll calm down once I've killed you.

*Stafford v. State*, 948 S.W.2d 921, 923 (Tex. App.—Texarkana 1997, pet. ref'd). The present case seems very similar: an officer arrests a defendant; on the way to the station, the defendant unleashes a flood of profanities, threats, and threatening behaviors that would not have happened if not for the officer's acts done while acting as a public servant.

Wiggins tries to distinguish *Stafford* by saying that case had "strong direct evidence of the defendant's intent." Here, White was attempting to hold Wiggins at bay with one hand while driving his vehicle with another. While he was holding onto Wiggins' collar to prevent him from interfering with his operation of the vehicle by attempting to "come over the console," White stated that Wiggins attempted to bite him. The videotape confirms Wiggins stated he would gnaw White's hand or finger off. *See also In re B.P.H.*, 83 S.W.3d 400, 408–09 (Tex. App.—Fort Worth 2002, no pet.) (appellant pulled out a knife and told A.M. he was going to kill him and both of his parents if A.M. told anyone about appellant and C.P.'s plan [to do some "Columbine"-like activities]; a reasonable trier of fact could have accepted this testimony as true and inferred from the accused's acts, words, and conduct that he knowingly and intentionally threatened A.M. with death if A.M. acted as a witness against him) (citing *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982) (holding intent can be inferred from accused's acts, words, and conduct)); *see Wright v. State*, 979 S.W.2d 868, 869 (Tex. App.—Beaumont 1998, pet. ref'd); *McCoy v. State*, 932 S.W.2d 720, 724 (Tex.

App.—Fort Worth 1996, pet. ref'd) (authorizing convictions for retaliatory conduct manifested during the public servant's contemporaneous actions).

Here, the jury heard Trooper White describe Wiggins' behavior after his arrest, and heard Wiggins' statements made as White transported him. Among these were statements that Wiggins would "gnaw" White's finger off, that he would kick White's head off and "break [White's] [expletive deleted] jaw." We find there was ample evidence for a jury to rationally conclude beyond a reasonable doubt that Wiggins intended to threaten White on account of White's service as a public servant. Further, the evidence is factually sufficient to support the jury's verdict.

Finding no error, we affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted:     April 23, 2008
Date Decided:       May 9, 2008

Publish

13