**Opinion issued November 26, 2019**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-18-00883-CR**

_____

**DAVID FOWLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1523977**

_____

**MEMORANDUM OPINION**

A jury convicted appellant, David Fowler, of the second-degree felony

offense of arson.[1] After appellant pleaded true to the allegations in two enhancement

_____

[1]    *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(E).

paragraphs, the jury assessed his punishment at twenty-six years' confinement. In one issue, appellant contends that the State failed to present sufficient evidence that he burned a vehicle owned by the complainant.

We affirm.

## Background

Appellant and Demetrius Lee, the complainant, have known each other for more than forty years. In 2016, they entered into an agreement for appellant to purchase a white Chevrolet truck from Lee. At the time, a mechanic was completing repairs on the truck, and the truck was not in Lee's possession. According to Lee, the total purchase price of the truck was $2,500, and appellant paid Lee $700 as a down payment.[2] Appellant offered to pay the remaining balance on the truck in $30 or $40 increments, which Lee did not consider to be a suitable arrangement. Lee proposed that they "keep [their] friendship agreement" while terminating their business agreement and that he return appellant's $700 down payment. Lee testified that he and appellant made plans to meet on September 16, 2016, for Lee to return appellant's down payment.

---

[2]  Appellant introduced into evidence a handwritten receipt indicating that, on June 7, 2016, he paid $700 to Lee "for the purchase of a 1998 Chevy [four-door] white" truck. This receipt was signed by both appellant and Lee. Appellant argued that because the receipt did not mention a purchase price of $2,500, the total purchase price of the vehicle was $700. Eddie Clark, Jr., who was a friend of both appellant and Lee, testified on appellant's behalf that he was present when appellant and Lee entered into the agreement concerning the truck and that the purchase price was $700 or $750. He did not recall any discussion of a $2,500 purchase price.

Lee and his girlfriend, Bridget Nelson, lived in a house in northeast Houston. On September 15, 2016, the day before appellant and Lee were scheduled to meet, appellant stopped by Lee's house when Lee was not present. Appellant was "kind of acting erratically," and Nelson called Lee and passed her phone through the front door so Lee and appellant could speak. Nelson heard appellant ask Lee, "When can you pay me my money?" Lee told appellant, "I am giving you your money tomorrow." Appellant responded, "Well, okay, that's fine." Appellant then left Lee's house.

Around 8:30 that evening, Lee and Nelson were at home when appellant returned to the house. Appellant started cursing and banging on the front door to the house, and Lee declined to speak further with appellant and stayed inside the house. At this time, a black truck was parked in Lee's driveway. Lee used this vehicle in his carpet-installing business. He testified that he owned this truck and that this was not the truck that was the subject of the agreement between him and appellant—that truck, which was white, was being repaired and was not located at Lee's house. Both Lee and Nelson testified that they had left a squeeze bottle containing lighter fluid sitting on their front porch.

Lee and Nelson then received a phone call from a family friend of Lee's, notifying them that they should go outside. At Lee's direction, Nelson looked through the peephole of the front door, which had a view of their driveway. She saw

3

appellant "standing in front of our black truck squeezing something that he had in his hand and all I [saw] was flames." Nelson saw appellant squeeze lighter fluid onto Lee's black truck and she saw a fire ignite. Nelson went outside and walked about ten feet from the front door. She "locked eyes" with appellant, whom she had met on several occasions and whom she identified in court, before going back inside the house. She testified that the fire did not appear to be an accident, stating, "Because [appellant] had banged on the door maybe ten minutes prior, banging and screaming, telling [Lee] he want[ed] his money." Nelson stated that she had "no doubt" that appellant lit the fire that destroyed Lee's truck.

When Lee learned that appellant had lighter fluid in his hand, he looked outside and saw that appellant was holding a container of lighter fluid and that his black truck was burning. Lee described the fire as a "very good blaze," and he stated that he had a "very good view of it." He saw appellant speak to someone near his mailbox at the end of the driveway before leaving his property, and Lee called the police. Lee acknowledged on cross-examination that he did not witness appellant pour lighter fluid on his truck or set the truck on fire.

Lee testified that while police officers and firefighters were at his house investigating the fire, appellant called him. Lee put the call on speaker so officers could hear the call, and he asked appellant why he set the fire. Appellant responded, "I told you I wanted my money," and Lee replied, "I told you I was going to give

4

you your money back tomorrow at 4:30." Appellant called Lee several times that evening, and, at one point, Lee offered to meet him at a nearby washeteria and to give him whatever money Lee had in his possession and the remainder of the down payment the next day, but appellant did not appear for this meeting.

While officers were still present at Lee's house, appellant returned to the scene, riding in the passenger seat of a car. Lee was speaking to an investigator at the time, and he told the investigator that appellant was the one who started the fire. The investigator informed other officers of what Lee had said, and the officers detained appellant. Lee identified appellant as the perpetrator of the arson.

Houston Police Department Officer J. Hatcher was dispatched to Lee's house, where he saw a truck that had been burned along the hood and the dashboard. This did not look like an accidental fire to Hatcher; instead, "[i]t looked like it was set." Hatcher observed a container of lighter fluid located on the ground near the truck. Hatcher was present at Lee's house when appellant returned to the scene as a passenger in a car, and, after Lee identified appellant, Hatcher conducted a traffic stop of the vehicle. Before officers arrested appellant, appellant stated that he had come by Lee's house because Lee owed him money and Lee had told him to come to the house.

J. Eli, an arson investigator with the Houston Fire Department, was also dispatched to Lee's house, where he learned that the fire had been located around

the hood and front windshield of the black truck. Eli examined the entire truck and saw that there was almost no damage to the truck's engine compartment, indicating that the cause of the fire was likely not mechanical or electrical. The damage from the fire was "contained to the dashboard and the windshield and mostly on the hood," although a hole had burned through the windshield and "scorched" a portion of the steering wheel and the driver's seat. Based on the burn pattern, Eli determined that the fire started on the outside of the truck. He also determined, based on the damage to the truck, the statements of Lee and Nelson, and the presence of the container of lighter fluid located close to the truck, that the fire was incendiary, "meaning that somebody started the fire." Eli collected swabs from the truck, as well as "a small amount of fire debris," and sent this material to be tested for the presence of accelerants.

G. Chapa is an "accelerant detection canine handler" for the Houston Fire Department, and he works with dogs who have been trained to detect the presence of various accelerants. He was dispatched to the scene, and he walked his canine around the truck. He was not able to get his canine up near the hood and windshield of the truck, where investigators believed the fire had started. Chapa's canine did not alert on any portion of the truck, nor did he alert on appellant. The canine did, however, alert on a patch of grass approximately twelve feet from the truck, and Chapa was told that this was the area around where officers had found the container

6

of lighter fluid. Chapa offered several reasons why an accelerant-detection canine would not alert on a person, including the possibilities that the person changed their clothes, washed their hands, had worn gloves, or did not have any accelerant on them. Chapa also testified that lighter fluid is typically packaged in a squeeze bottle, and that, when using this type of bottle, accelerant may not get on the user "because when you squeeze it, it projects [the fluid] away from you, instead of if you pour it, it could splash on you."

Emerald Nazareno, a forensic scientist with the Texas Department of Public Safety Forensic Arson Laboratory, conducted the technical review of the testing of the materials collected from the truck. The laboratory testing involved using a gas chromatograph/mass spectrometer to test for the presence of ignitable substances. The testing of the swabs and debris involved in this case revealed the presence of "medium petroleum distillate," which includes substances such as paint thinners, paint strippers, and charcoal lighter fluids.

Ronald Magic, who had been friends with appellant for several years, testified on appellant's behalf. Magic testified that, on September 15, 2016, he first saw appellant around 3:00 or 4:00 p.m., when they gathered with others for a barbecue. At some point that evening, appellant received a phone call, which Magic heard because appellant had placed his phone on speaker. After the phone call, appellant asked Magic and another man if they could "take him over there," which Magic

7

understood to be "the place where the person said he got part of [appellant's] money for him." Magic agreed to drive appellant, and they drove past Lee's house, where police were still present. Officer Hatcher then conducted a traffic stop on Magic's vehicle, and officers arrested appellant. Magic testified that the only times appellant was not in his presence from around 3:00 or 4:00 in the afternoon on September 15 to the time Hatcher stopped his vehicle were when appellant made two short trips to a convenience store across the street from the barbecue to purchase more beer. Magic had no personal knowledge "of any kind of arson at all."

The jury found appellant guilty of the offense of arson. After appellant pleaded true to the allegations in two enhancement paragraphs, the jury assessed his punishment at twenty-six years' confinement. This appeal followed.

## Sufficiency of the Evidence

In his sole issue, appellant contends that the State failed to present sufficient evidence that he burned Lee's vehicle. Specifically, appellant argues that the State did not present sufficient evidence that (1) he was the person who committed the arson, and (2) Lee owned the vehicle that was burned.

### A.    *Standard of Review*

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.

*See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). The jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *Rivera v. State*, 507 S.W.3d 844, 853 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We give great deference to the jury's credibility determinations. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."). A criminal conviction may be based on circumstantial evidence. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d

9, 13 (Tex. Crim. App. 2007)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

## B.    Analysis

In this case, the State was required to prove that appellant started a fire by igniting a flammable liquid with the intent to destroy or damage a vehicle owned by Demetrius Lee and appellant knew that the vehicle was located on property belonging to another. *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(E). "[T]o sustain an arson conviction, the State must show, in addition to the other elements, that the accused set the fire or was 'criminally connected therewith.'" *Merritt*, 368 S.W.3d at 525 (quoting *Bussey v. State*, 474 S.W.2d 708, 710 (Tex. Crim. App. 1972)); *see Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.) ("Identification of the defendant as the person who committed the offense charged is part of the State's burden of proof beyond a reasonable doubt."). The State may prove the defendant's identity and criminal culpability "by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner*, 306 S.W.3d at 285; *Wiggins*, 255 S.W.3d at 771 ("When a defendant contests the identity element of the offense, we are mindful that identity may be proven by direct evidence, circumstantial evidence, or even inferences.").

At trial, Lee testified about the agreement he had with appellant concerning the sale of a truck: appellant made a $700 down payment towards the total purchase price of $2,500. After appellant told Lee that he could only pay around $40 at a time towards the remainder of the purchase price, Lee called off the sale and arranged to refund appellant's down payment on September 16. Lee and Nelson testified that, on September 15, appellant stopped by Lee's house while Lee was not present and had a conversation with Lee on Nelson's cell phone. During this conversation, Lee assured appellant that he would refund his down payment the next day.

Lee and Nelson testified that appellant stopped by their house again later that evening. Appellant was cursing and banging on their front door, demanding that Lee give him his money, and Lee declined to speak with him further. Lee then received a phone call from a family friend, telling him to go outside. Nelson looked through the peephole of their front door, and she could see their front yard and driveway, where Lee had parked a black truck that he used for work. Nelson testified that she saw appellant standing in front of the truck, squeezing something that he was holding in his hands. She then saw the truck catch fire. Although Lee did not see the fire ignite, he looked outside and saw appellant standing near the burning truck and holding a container of lighter fluid. Lee, while in the presence of investigating police officers, later spoke with appellant on the phone, and he testified that when he asked appellant why he had set the fire, appellant responded, "I told you I wanted my

11

money." Officers discovered a squeeze bottle containing lighter fluid lying on the grass several feet from Lee's truck. Analysis of debris from the fire revealed the presence of "medium petroleum distillate," which includes substances such as charcoal lighter fluids.

The State thus presented testimony of an eyewitness—Nelson—who testified that she saw appellant—a person with whom she was familiar—squeeze lighter fluid onto the truck, which then ignited. The State also presented Lee's testimony that he was having a disagreement over money with appellant, that appellant had arrived at Lee's house just before the truck caught fire and was angry with Lee, that Lee witnessed appellant standing near the burning truck holding lighter fluid, and that appellant later admitted to Lee that he started the fire because Lee had not yet returned his down payment. Based on this evidence, a rational jury could have found beyond a reasonable doubt that appellant started the fire that burned Lee's truck. *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(E); *Merritt*, 368 S.W.3d at 525.

On appeal, appellant attacks both Lee's and Nelson's credibility, arguing that Lee was not a credible witness because he had lied about the purchase price of the truck appellant had wished to buy and that Nelson's identification of appellant as the perpetrator of the arson, which took place through the peephole of the front door, was not reliable. Lee testified that he had sold a white truck to appellant for a total purchase price of $2,500, of which appellant paid $700 as a down payment.

12

Appellant introduced into evidence a receipt for $700, signed by both appellant and Lee, that made no mention of a $2,500 total purchase price, and he also called as a witness Eddie Clark, who purportedly witnessed the transaction between appellant and Lee and testified that he had no recollection of any discussion of a $2,500 purchase price, only a payment of $700. The jury, however, is the sole judge of credibility of the witnesses, and we presume that when evidence supports conflicting inferences, the jury resolved those conflicts in favor of the verdict. *See Gardner*, 306 S.W.3d at 285; *Murray*, 457 S.W.3d at 448–49. It was within the province of the jury to believe or disbelieve all or any part of Lee's testimony and Clark's testimony concerning the transaction, and we will not re-evaluate Lee's credibility on appeal. *Williams*, 235 S.W.3d at 750; *Rivera*, 507 S.W.3d at 853.

With respect to Nelson's testimony concerning her identification of appellant through the peephole of her front door, the trial court admitted several photographs of the house, the location of the front door, and the location of the driveway relative to the front door. Nelson testified that the view of the driveway from the front door was unobstructed. She also testified that, after she looked through the peephole and saw appellant ignite the fire, she went outside and walked about ten feet from the door. She then "locked eyes" with appellant before going back inside the house. As with Lee's credibility, it was within the province of the jury to examine the photographs of the house and to determine that Nelson's identification of appellant

13

as the perpetrator of the arson was credible and reliable. *See Rivera*, 507 S.W.3d at 853. We defer to the jury's credibility determination. *Gardner*, 306 S.W.3d at 285.

As evidence undermining his conviction, appellant points out that Officer Chapa's canine did not detect the presence of lighter fluid on him and that Magic provided an alibi for appellant, testifying that appellant was in his presence at a barbecue at all times from around 3:00 or 4:00 in the afternoon on September 15 up until the time Officer Hatcher conducted the traffic stop of Magic's vehicle and arrested appellant, with the exception of two instances when appellant made short trips to a nearby convenience store to purchase more beer for the barbecue. Chapa testified that his canine alerted to the presence of an accelerant on a portion of the grass at Lee's house, which is where the bottle of lighter fluid was found, but the canine did not alert to the presence of an accelerant on appellant. Chapa also testified, however, that when lighter fluid is packaged in a squeeze bottle, which was the case here, traces of accelerant may not end up on the person using the lighter fluid because the squeeze bottle "projects [the fluid] away from you, instead of if you pour it, it could splash on you." With respect to Magic's alibi testimony, which conflicted with Lee's and Nelson's testimony placing appellant at their house and setting the truck on fire before Magic drove appellant by the house later that evening, we again note that when the record supports conflicting inferences, we presume the jury resolved the inconsistencies in favor of the verdict. *See Murray*, 457 S.W.3d at

14

448–49; *see also Rivera*, 507 S.W.3d at 853 (stating that jury, as sole judge of credibility of witnesses, may accept one version of facts and reject another, and may reject any part of witness's testimony).

Finally, appellant argues that the State presented insufficient evidence that Lee owned the truck that burned, as the State relied only on Lee's testimony at trial that he owned the truck and failed to provide any documentary evidence of ownership such as a vehicle title or registration.[3] Appellant, however, cites no authority that such documentary evidence is necessary in an arson case and that a person's unequivocal testimony that he owns the vehicle that burned is insufficient to establish ownership, particularly in a case in which ownership of the vehicle was not contested at trial. Here, during cross-examination of Lee, appellant's trial counsel stated, "there is no dispute that your vehicle got burned" and "[n]obody is arguing that your vehicle got burned." Defense counsel instead framed the issue for trial as being who committed the arson.[4] The Court of Criminal Appeals has long held that proof of ownership in arson cases may be established by parol evidence. *See, e.g.*, *Hamilton v. State*, 165 S.W.2d 737, 738 (Tex. Crim. App. 1942). Lee's

---

[3]    Nelson also testified that the truck that burned belonged to Lee, describing the truck as "our truck" and stating that Lee used the truck for work.

[4]    During closing argument, appellant's trial counsel stated, "We also didn't argue about the fact that Mr. Lee had his vehicle destroyed. Also a bad thing."

15

testimony that he owned the truck that burned is sufficient to establish ownership of the vehicle.

Based on the evidence presented at trial and viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed arson by igniting a flammable liquid that damaged a vehicle owned by Lee. *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(E); *Merritt*, 368 S.W.3d at 525. We therefore hold that the State presented sufficient evidence to support appellant's conviction for the offense of arson.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).