**Affirmed and Opinion filed April 28, 2020.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-18-00689-CR

**DARYL EDWARD BARNES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 412th District Court
Brazoria County, Texas
Trial Court Cause No. 82903-CR**

## OPINION

In two issues, appellant Daryl Edward Barnes challenges the legal sufficiency of the evidence in support of the jury's finding that he committed retaliation by threatening to assault a police officer. We affirm.

### *Background*

An associate pastor and greeter at the Overflow Church in Manvel, Texas chatted with appellant as he left church one Sunday. It was the day after a white

supremacist drove his car into a group of peaceful protestors at a rally in North Carolina. The pastor had spoken of the incident during the service, exhorting the congregation to "focus on being together rather than being divided." Appellant told the greeter that the pastor should have stood up for what was right and addressed the issue directly. The greeter responded that the pastor wanted the congregation "to walk in love, not hate." Appellant, becoming "hyper," said he was going to confront the pastor directly. The greeter told appellant "it's not the time for us to pack emotions," to which he responded, "oh, I'm packing" and patted a messenger bag he was carrying. The greeter alerted one of the deacons, who followed appellant out of the church and watched him get into his car and drive away.

Church officials called the police and asked for a criminal trespass warning advising appellant not to return to the church. Officer Binnicker and Deputy Whatley went to appellant's apartment to give him the warning.[1] After some discussion about signing the warning, appellant refused to sign. As the officers were leaving, appellant told Binnicker, "I'll see you in court," "I am going to kill you in court," and "I'm going to destroy you."

Less than an hour later, appellant went to the Manvel Police Station and spoke to Officer McClain in the lobby. Appellant said he wanted to report suspicious activity and prostitution by the Pearland Police Department but quickly launched into a rant about "systems" that the police have "to protect each other." He then stated that he had been "waiting for one of y'all to harass me so I can show what happens when one of y'all harasses me." He inquired if he could "claim I fear you" and justifiably shoot McClain "on sight." He asked McClain if he had children, a wife, or a girlfriend and the color of her hair. Referring to McClain's

---

[1] At the time, Binnicker's last name was Shanks, but she had changed her name by the time of trial. We refer to her in this opinion as Binnicker.

girlfriend, he said, "When she runs up on my car, I could just shoot at her . . . if I fear her." He also made the following statements, among others:

- "Mess with me. I can't wait to get you in court."

- "Go back and tell all your little friends in blue that we got something for you."

- "You're toast."

Appellant then left and returned approximately five minutes later. He spoke with McClain and Binnicker in the lobby and continued his rant. Binnicker told appellant she needed to do a pat down for safety. Appellant emptied his pockets and lifted his shirt, but the officers did not do a pat down. After a few minutes, Binnicker told appellant he needed to leave. After continuing to rant for a few more minutes, appellant left again, got into his car, and pulled up in front of the police station door.

Appellant then pointed with his right hand "at his eyes and ma[d]e his two fingers into the shape of a gun[,] pull[ed] his thumb down as if [he were] firing the firearm[,] and then [showed] a motion of recoiling as if [he were] going to shoot." Binnicker testified she saw the hand gesture as a threat because of appellant's comments at church earlier that day about packing a firearm, appellant's statement at his apartment that he was going to kill Binnicker, and appellant's later insinuation that he was going to shoot Binnicker and McClain.

McClain testified that he was aware appellant had referenced a firearm at the church and threatened to kill Binnicker when she delivered the criminal trespass warning and the gesture by appellant was "a third instance where [he was] referencing a gun." McClain took the hand gesture to be a threat.

Appellant was charged with two counts of retaliation against peace officers

3

Binnicker and McClain by threatening to kill Binnicker and by threatening to assault McClain. The jury acquitted appellant of retaliation by threatening to kill Binnicker but found appellant guilty of retaliation by threatening to assault McClain.

## *Discussion*

In two issues, appellant contends that the evidence is legally insufficient to support the jury's finding of retaliation based on his use of a "finger gun" on the grounds that his gesture was free speech protected by the First Amendment of the United States Constitution and the State did not present evidence of an imminent threat of harm. We first turn to appellant's first argument, concluding it was not preserved for appellate review, and then discuss the second argument, concluding the State was not required to present evidence of an imminent threat of harm and the State presented legally sufficient evidence of retaliation by threat.

### I.    Was appellant required to preserve error on his First Amendment challenge?

Appellant argues his use of a finger gun was protected free speech under the First Amendment as determined by the Supreme Court of the United States in *Watts v. United States*, 394 U.S. 705 (1969). Appellant contends his gesture was not a "true threat" under *Watts* and thus his conviction cannot survive constitutional muster. *See id*. at 707 ("What is a threat must be distinguished from what is constitutionally protected speech."). Appellant did not raise this issue below but argues it is part of his legal sufficiency challenge and he was not required to preserve error. The State contends appellant waived this issue by failing to object in the trial court.

Although appellant couches his First Amendment argument as part of a legal sufficiency challenge that does not need to be preserved for appellate review, *see*

4

*Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004), an "as applied" challenge to the constitutionality of a statute cannot be raised for the first time on appeal. *See Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008) ("[W]e should not overturn the well-established requirement that appellant must preserve an 'as applied' constitutional challenge by raising it at trial.") (citing Tex. R. App. Proc. 33.1, and *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995)). Appellant contends that his use of a finger gun constitutes protected First Amendment speech and, as such, his conviction under the retaliation statute is unconstitutional. Accordingly, he challenges the constitutionality of the retaliation statute as applied to him.

During oral argument, appellant's counsel asserted that the *Watts* case stands for the proposition that he was not required to preserve error. In that case, the defendant was convicted of knowingly and willingly threatening the President based on his statement, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." 394 U.S. at 706. At the close of the government's case, the defendant's trial counsel moved for judgment of acquittal on the basis that there was no evidence the defendant "made a threat against the life of the President." *Id*. The Court concluded that the statute at issue "which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Id*. at 707. The Court further held that the "kind of political hyperbole engaged in by" the defendant was not a true threat under the statute and "[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise." *Id*. at 708. Preservation of error was not at issue.

Here, appellant did not move for a directed verdict or otherwise object on

the basis that appellant's speech was not a true threat under the First Amendment. Appellant argued only that a video admitted at trial did not substantiate McClain's allegation that appellant made the finger gun gesture:

> [T]he officer testified as to the assault that he was talking about and that assault was Mr. Barnes pointing two fingers at him, simulating a gun and recoil. We've watched the video several times. The video does not substantiate the officer's claim. He even admits on the record that, no, you can't see it. He also admits that there is footage that does cover that area that he did not have and does not have. So we don't think that a reasonable juror can come to a conclusion beyond a reasonable doubt on either [count of retaliation] and we would ask for a directed verdict on those areas.

We conclude appellant's First Amendment challenge is an "as applied" challenge to the constitutionality of the retaliation statute. *Estes v. State*, 546 S.W.3d 691, 698 (Tex. Crim. App. 2018) ("[I]n an as-applied [constitutional] challenge, the claimant concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances."). Because appellant did not raise his challenge in the trial court, he has forfeited his claim for review. *See Burton v. State*, 194 S.W.3d 686, 688 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("[B]y failing to request that the trial court find the statute unconstitutional as applied to him, appellant has waived this argument on appeal."); *see also Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018) ("Parties are not permitted to bootstrap a constitutional issue from the most innocuous trial objection."); *Vasquez v. State*, 483 S.W.3d 550, 556 (Tex. Crim. App. 2016) (holding appellant's objection was "too imprecise" to preserve error on complaint that his statement was admitted in violation of Fifth Amendment under *Miranda v. Arizona*, 384 U.S. 436 (1966)). *Cf. Puckett v. State*, 801 S.W.2d 188, 193 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (analyzing as applied constitutional challenge to retaliation statute under *Watts*).

## II. Was the State required to present evidence of an imminent threat?

Appellant also argues the State was required to show that he intentionally or knowingly threatened McCain with imminent bodily injury and failed to do so. The State contends it was not required to show the threat of bodily injury was imminent.

When reviewing sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt as long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Under the retaliation statute, "A person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act . . . in retaliation for or on account of the service or status of another as a . . . public servant." Tex. Pen. Code § 36.06(a)(1)(A). Appellant was charged with "intentionally or knowingly threaten[ing] to harm . . . McClain . . . [by] assault[ing him] in retaliation for or on account of [McClain's] service . . . as a public servant,

7

a peace officer." The jury charge defined "assault" as "intentionally or knowingly or recklessly caus[ing] bodily injury to another" or "intentionally or knowingly threaten[ing] another with imminent bodily injury." *See also id.* § 22.01(a)(1)-(2).

There are two types of assault: assault by causing bodily injury and assault by threatening someone with imminent bodily injury. *Id.* Assault by causing bodily injury does not include a threat of imminent harm. *Id.* § 22.01(a)(1) (defining assault as "intentionally, knowingly, or recklessly causes bodily injury to another"). Moreover, we have held that the retaliation statute "does not require that the threat to harm in retaliation be imminent." *See Coward v. State*, 931 S.W.2d 386, 389 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (holding terroristic threat is not lesser included offense of retaliation because terroristic threat "requires proof that the person making the threat intended to place the victim in fear of imminent bodily injury"). So have several sister courts. *See, e.g.*, *Wiggins v. State*, 255 S.W.3d 766, 770 (Tex. App.—Texarkana 2008, no pet.) ("The offense of retaliation does not necessitate the threatened harm be imminent."); *In re D.D.*, 101 S.W.3d 695, 697 (Tex. App.—Austin 2003, no pet.) ("Fear of imminent bodily injury is not an element of retaliation."); *Helleson v. State*, 5 S.W.3d 393, 396 (Tex. App.—Fort Worth 1999, pet. ref'd) (same). The State was not required to show an imminent threat to harm McClain to establish retaliation by threat of assault—the State needed to show only that appellant intentionally or knowingly threatened to harm McClain with bodily injury.[2] We turn to the evidence presented at trial.

Appellant confronted McClain in the lobby of the police station less than an hour after Binnicker served appellant with the criminal trespass warning. He made

---

[2] Appellant argues that the "true-threats principle" articulated in *Watts* requires the threat of harm to be imminent under the First Amendment. We do not reach that issue because, as discussed, it is not preserved for our review.

several threatening statements to McClain, including references to showing officers "what happens when one of y'all harasses me," justifiably shooting McClain "on sight," shooting McClain's girlfriend "if I fear her," and instructing McClain to "tell [his] friends in blue that we got something for you." Appellant also told McClain, "You're toast." Appellant then left only to return five minutes later and continue his rant. After all this, appellant drove his car in front of the police station door and made the finger gun gesture as if he were "firing [a] firearm." Both McClain and Binnicker interpreted the gesture as a threat because of appellant's words and actions earlier in the day. The gesture was the third instance that day in which appellant alluded to the use of a gun.

We conclude that a rational jury could have found based on the cumulative effect of all this evidence, not just the use of a finger gun, that appellant committed retaliation by threatening to assault McClain. We overrule appellant's issues.

### *Conclusion*

We affirm the judgment of the trial court.

/s/ Frances Bourliot
   Justice

Panel consists of Chief Justice Frost and Justices Christopher and Bourliot.

Publish — TEX. R. APP. P. 47.2(b).