# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00295-CV

---

### In the Matter of J. A. F.

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. JV 36776, THE HONORABLE RHONDA HURLEY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The district court, sitting as a juvenile court, adjudicated appellant J.A.F. delinquent after finding that he committed the offense of driving while intoxicated with an alcohol concentration of 0.15 or more. *See* Tex. Fam. Code §§ 51.03(a)(3), 54.03(f); Tex. Penal Code § 49.04(a), (d). The court placed appellant on probation in the custody of his mother for six months. *See* Tex. Fam. Code § 54.04(d)(1)(A). On appeal, appellant challenges the sufficiency of the evidence supporting his delinquency adjudication and complains about the admission of statements that he made to the detaining officer. We affirm the juvenile court's judgment of adjudication and order of probation.

## BACKGROUND

Appellant was charged by petition with driving while intoxicated with an alcohol concentration of 0.15 or more. Appellant and his counsel waived a jury trial and proceeded with a contested adjudication hearing before the court.

The juvenile court heard evidence that on April 27, 2017, just before six o'clock in the morning, emergency medical services and police were dispatched in response to a 911 call concerning a man passed out in a car.

Conner Johnson, an emergency medical technician, testified that he arrived at the location to find a four-door sedan "parked in a very awkward position on the grassy median on the right side of the roadway." A single male occupant was slumped over in the driver's seat; the keys were in the ignition, and the car was running. Johnson opened the driver's car door, and his partner leaned into the car, across the occupant, to turn it off. He then removed the keys and placed them on the hood of the car. The occupant did not wake up as they performed these actions, so they woke him up. The occupant was initially "very confused" and "very startled" and moved as if to start or drive the car—he grabbed the steering wheel, reached for where the keys would have been, and pressed the gas pedal with his foot. Johnson asked the occupant to step out of the car. The occupant smelled strongly of alcohol, was very unsteady on his feet, and had vomit on his shirt. The EMT noted vomit on the inside of the car too.

Johnson placed the occupant in the back of the ambulance to conduct a medical evaluation. According to Johnson, the occupant seemed "awake and alert and aware" and "cognizant of his surroundings and the situation" but was uncooperative in that he did not give straight-forward answers to the EMT's questions. The occupant was eventually identified by his driver's license, which was found in the car by police who arrived on the scene while the occupant was in the back of the ambulance. The occupant was identified as "J.A.F." with a date of birth of February 21, 2001.[1] Johnson explained that after being identified, the occupant's

---

[1] Because appellant is a minor child, we use his initials rather than his full name in this opinion. *See* Tex. R. App. P. 9.10(a)(3).

2

demeanor changed. He began answering questions appropriately but seemed angry that EMS knew his identity. Johnson testified that after conducting a full interview with the occupant to assess his mental capacity, the EMTs determined that the occupant was "within mental capacity" for a sixteen-year-old but appeared "obviously under the influence of some substance, which smelled strongly of alcohol on him." The EMT checked the occupant's blood sugar to rule out low blood sugar as the cause of impairment. Johnson testified that all of the occupant's vital signs were within normal limits.

Gabriel Vasquez, a patrol officer with the Austin Police Department, arrived on the scene approximately ten minutes after EMS and observed the car teetering on a small mound on the side of the road (not all of the wheels were touching the ground) and blocking part of the sidewalk. He made contact with the car's occupant in the back of the ambulance where the EMTs were evaluating him. Officer Vasquez then asked several questions to glean information about the situation. The occupant told the officer that he was coming from a friend's party and was going to his sister's house. He said that he had driven to the location where the car was stopped. The officer noted that the juvenile had bloodshot eyes, slurred speech, and "a very strong odor of an alcoholic beverage coming from his breath." In addition, the juvenile gave confusing responses to the questions—for example, he gave his address when asked his date of birth—and was "disorient[ed]" as to his location—he was in Travis County but thought he was in Bastrop County. The officer became concerned that the juvenile was under the influence of alcohol, so he questioned him about alcohol consumption. The juvenile disclosed that he had consumed four fourteen-ounce beers. He also told the officer that he had parked the car to "catch a quick nap" and "sober up a little bit."

3

After the juvenile was medically cleared by EMS, Officer Vasquez conducted standardized field sobriety tests; the juvenile exhibited signs of intoxication on all of them.[2] Ultimately, based on his observations and the results of the field sobriety tests, Officer Vasquez "arrested" the car's occupant, the juvenile identified as "J.A.F.," for driving while intoxicated.[3] After the officer provided the requisite statutory warnings, the juvenile agreed to submit to a breath test. During transport to the jail for the breath test, the juvenile admitted to the officer that he was "a bit tipsy." At the adjudication hearing, Officer Vasquez identified appellant in open court as the individual that he "arrested" that morning.

John Ricker, an intoxilyzer operator with the Austin Police Department, testified at the adjudication hearing about conducting a breath test on the morning of April 27, 2017, on a subject with the name "J.A.F." and birthdate of February 21, 2001. During the officer's testimony, copies of the breath-test results, which reflected an alcohol concentration of 0.164 and 0.155, were admitted into evidence without objection.

---

[2] The officer conducted four field sobriety tests. During the horizontal gaze nystagmus test, the occupant exhibited all six clues. On the walk-and-turn test, the occupant exhibited seven out of eight clues. During the one-leg stand, the occupant exhibited all four clues. Finally, during the Romberg balance test, the officer observed a two- to thee-inch front-to-back sway.

[3] Taking a juvenile into custody is not considered to be an "arrest" "except for the purposes of determining the validity of taking [the juvenile] into custody or the validity of a search under the laws and constitution of this state or of the United States." Tex. Fam. Code § 52.01(b); *see Vasquez v. State*, 739 S.W.2d 37, 42 (Tex. Crim. App. 1987) (noting that "the Legislature has mandated that [a] child is not 'arrested' for purposes of criminal action until a juvenile transfer order is entered"). However, during the adjudication hearing, the witnesses and the parties used the term "arrest" when referring to Officer Vasquez taking appellant into custody, and the parties use that term in their briefing in this Court. *See, e.g.*, *Arrest*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "arrest" as "The taking or keeping of a person in custody by legal authority[.]"); *see also Lanes v. State*, 767 S.W.2d 789, 801 (Tex. Crim. App. 1989) (characterizing Family Code section 52.01, which establishes circumstances under which child may be taken into custody, as "Texas statutory guidelines for a juvenile arrest").

4

At the conclusion of the adjudication hearing, the juvenile court found that the State had proved beyond a reasonable doubt that appellant had committed the offense of driving while intoxicated as alleged in the petition and adjudicated appellant delinquent for that offense. The court placed appellant on probation for six months under the supervision of his mother. This appeal followed.

## DISCUSSION

Appellant raises three points of error. In his first two points of error, he claims that the evidence is insufficient to support the juvenile court's delinquency finding because the evidence failed to prove that he operated a motor vehicle in a public place or that he had an alcohol concentration of 0.15 or more. In his third point of error, appellant argues that the juvenile court erred in denying his motion to suppress and admitting the statements that he made to Officer Vasquez.

### Sufficiency of the Evidence

Adjudications of delinquency are based on the criminal standard of proof. *See* Tex. Fam. Code § 54.03(f). Consequently, although juvenile proceedings are characterized by statute as civil proceedings, we review the sufficiency of the evidence underlying a finding that the juvenile engaged in delinquent conduct by applying the standard applicable to challenges to the sufficiency of the evidence in criminal cases.[4] *Matter of D.L.*, 541 S.W.3d 917, 920 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *In re D.A.K.*, 536 S.W.3d 845, 847 (Tex. App.—

---

[4] Both the Texas Supreme Court and the Court of Criminal Appeals have concluded that, although quasi-criminal in nature, proceedings in juvenile court are civil proceedings that are not to be treated as criminal matters unless specifically mandated. *See In re Hall*, 286 S.W.3d 925, 927 (Tex. 2009); *Ex parte Valle*, 104 S.W.3d 888, 889 (Tex. Crim. App. 2003); *see also* Tex. Fam. Code §§ 51.17, 56.01.

5

Houston [1st Dist.] 2017, no pet.); *In re M.C.L.,* 110 S.W.3d 591, 594 (Tex. App.—Austin 2003, no pet.). Under that standard, we consider all of the evidence adduced at trial in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (concluding that *Jackson* due-process standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"); *In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (concluding that *Brooks* applies to juvenile adjudication proceedings).

In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). However, although we consider everything presented at trial, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The trier of fact is the sole judge of the weight and credibility of the evidence and may draw reasonable inferences from basic facts to ultimate facts. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *see Jackson*, 443 U.S. at 319. In our review, we assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a

6

manner that supports the verdict, and we defer to that resolution. *Jackson*, 443 U.S. at 318; *Zuniga*, 551 S.W.3d at 733; *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016). We must determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Arroyo*, 559 S.W.3d at 487; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *Clayton*, 235 S.W.3d at 778.

In his first point of error, appellant contends that the evidence is insufficient to prove that he operated the car in which he was found passed out. This contention is premised on the fact that the EMT did not make an in-court identification of appellant during the adjudication hearing. In his second point of error, appellant asserts that the evidence is insufficient to prove that he had an alcohol concentration of 0.15 or more. This assertion is premised on the fact that the intoxilyzer operator did not make an in-court identification of appellant during the adjudication hearing. Relying on cases that address an equivocal or uncertain in-court identification of the defendant, appellant maintains that, given the lack of in-court identification of him by these two witnesses, the evidence failed to identify him as the driver of the car or as the person whose breath-test results indicated an alcohol concentration of 0.15 or more.

However, no one method or formalized procedure is required for the State to prove the identity of the accused. *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.); *Clark v. State*, 47 S.W.3d 211, 214–15 (Tex. App.—Beaumont 2001, no pet.); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd). The absence of a formal in-court identification does not in and of itself render the evidence insufficient on the issue of identity. *Espinoza v. State*, 571 S.W.3d 427, 434 (Tex. App.—Fort Worth 2019, pet. ref'd); *Arevalo v. State*, No. 05-18-00126-CR, 2019 WL 3886650, at *4 (Tex.

7

App.—Dallas Aug. 19, 2019, pet. ref'd) (mem. op., not designated for publication). The State may prove a defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (citing *Gardner v. State,* 306 S.W.3d 274, 285 (Tex. Crim. App. 2009)); *Jenkins*, 493 S.W.3d at 599. We review the totality of the circumstances to determine whether there is sufficient evidence showing that a defendant is the individual who committed the offense. *Lewis v. State*, No. 03-13-00275-CR, 2015 WL 1810389, at *2 (Tex. App.—Austin Apr. 16, 2015, pet. ref'd) (mem. op., not designated for publication); *Wiggins*, 255 S.W.3d at 771; *see, e.g.*, *Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. 1981) (concluding "from a totality of the circumstances the jury was adequately apprised that the witnesses were referring to appellant"). The absence of an in-court identification is merely a factor for the factfinder to consider in assessing the weight and credibility of the witnesses' testimony. *Lewis*, 2015 WL 1810389, at *2; *Wiggins*, 255 S.W.3d at 771.

The evidence in this case established that a sixteen-year-old male named "J.A.F." with a birthdate of February 21, 2001, was found passed out in a car. The juvenile was the only occupant in the car, which was still running, and he was slumped over in the driver's seat. While EMT Johnson did not identify appellant in court as the individual that he found passed out in the driver's seat of the car, the evidence reflected that he removed the car's sole occupant and placed him in the back of the ambulance to evaluate him. The evidence also reflected that Officer Vasquez arrived on the scene and made contact with the car's occupant while the occupant was in the back of the ambulance being evaluated by the EMTs. During the ensuing encounter, the car's occupant told the officer that he had driven the car to that location. This admission can be heard on the recording from Officer Vasquez's dash-cam, a copy of which was admitted into

8

evidence. After concluding that the car's occupant was intoxicated, the officer took the occupant into custody for driving while intoxicated. Officer Vasquez identified appellant in court as the person that he encountered that morning and "arrested" for driving while intoxicated. Moreover, the recording from Officer Vasquez's dash-cam showed the person who was taken into custody. Thus, the juvenile court had the opportunity to view appellant in court and ascertain if he was the same individual depicted on the video, whom Officer Vasquez first encountered in the back of the ambulance and subsequently took into custody for DWI.

Viewing the evidence in the light most favorable to the juvenile court's delinquency finding, we hold that a rational factfinder could have identified appellant, beyond a reasonable doubt, as the person who was the sole occupant of the car in which he was found passed out and who admitted driving the car to the officer.

The evidence further established that Officer Vasquez asked the car's occupant—identified by the officer in court as appellant—to consent to giving a breath specimen, and appellant agreed. The dash-cam recording shows appellant consenting to the breath test and the officer informing appellant, in response to appellant's questions, that he was being taken downtown to the jail for the breath test. Officer Vasquez can be heard on the video making arrangements for conducting appellant's breath test in compliance with the laws requiring juveniles to remain separate from adult detainees. *See* Tex. Fam. Code § 51.12(f). The dash-cam recording depicts Officer Vasquez removing appellant from his patrol car at the downtown jail facility at approximately 8:19 that morning. Approximately thirty minutes later, at 8:49 a.m., a male voice can be heard on the dash-cam recording telling appellant that ".16 was your first result and .15 was your second." Appellant asks if "that is a lot," and a male voice explains that 0.08 is the legal limit so appellant's results were double the legal limit "almost two and a-half

9

hours from when [the police] first started talking to [him]." The video then depicts Officer Vasquez placing appellant back in the patrol car and transporting him to the juvenile-detention facility. While Officer Ricker, the intoxilyzer operator, did not identity appellant in court as the juvenile to whom he administered the breath test that morning, his testimony reflects that, after the requisite fifteen-minute observation period, he conducted a breath test on a juvenile named "J.A.F." The breath-test results for that breath test, which were admitted into evidence, indicated that the officer conducted the test on April 27, 2017, on breath samples provided at 8:43 a.m. and 8:46 a.m. by a subject with appellant's name and date of birth, and that the subject had a breath-alcohol concentration of 0.164 and 0.155.

Viewing the evidence in the light most favorable to the juvenile court's delinquency finding, we hold that a rational factfinder could have identified appellant, beyond a reasonable doubt, as the person who provided the breath samples demonstrating an alcohol concentration of 0.15 or more.

In sum, based on the combined and cumulative force of the circumstantial evidence, and the reasonable inferences drawn from it, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant operated the car in which he was found passed out and that appellant had an alcohol concentration of 0.15 or more. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) ("[I]t is not necessary that every fact and circumstance "point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." (quoting *Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)); *see e.g.*, *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012) (concluding that appellate court failed to consider "combined and cumulative force" of all evidence in light most favorable

10

to trial court's finding in reviewing sufficiency of identity evidence). Accordingly, we hold that the evidence was sufficient to support appellant's delinquency adjudication for driving while intoxicated with an alcohol concentration of 0.15 or more. We overrule appellant's first two points of error.

**Motion to Suppress**

During Officer Vasquez's testimony at the adjudication hearing, appellant orally moved to suppress the statements that he made to the officer during their encounter, asserting that the statements were inadmissible because they were the result of a custodial interrogation and he had not been given the requisite statutory warnings. The juvenile court reserved ruling on the motion and, at the conclusion of evidence, recessed the proceeding and asked the parties to submit briefs of the issue. The court subsequently denied the motion to suppress and, when the adjudication hearing resumed, adjudicated appellant delinquent.

In his third point of error, appellant contends that the juvenile court erred in denying his motion to suppress and admitting—through Officer Vasquez's testimony and the dash-cam recording from his patrol car—the statements that appellant made to the officer. Appellant argues that the statements were inadmissible because he was in custody at the time that he made them, but he had not been admonished as required under Texas Family Code section 51.095.

We review a juvenile court's decision on a motion to suppress evidence for an abuse of discretion. *In re R.J.H.*, 79 S.W.3d 1, 7 (Tex. 2002); *In re D.G.*, 96 S.W.3d 465, 467 (Tex. App.—Austin 2002, no pet.). We use a bifurcated standard of review, giving almost total deference to the juvenile court's findings of fact, but conducting a *de novo* review of the court's

11

application of law to those facts. *In re R.J.H.*, 79 S.W.3d at 7; *In re D.G.*, 96 S.W.3d at 467; *see Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997) (explaining bifurcated standard of review). When, as here, the trial court makes explicit factual findings, we determine whether the evidence, when viewed in the light most favorable to the court's ruling, supports those findings. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *In re D.J.C.*, 312 S.W.3d 704, 711 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In our review, "[t]he prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it." *Matthews v. State*, 431 S.W.3d 596, 601 n.5 (Tex. Crim. App. 2014); *accord State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011). We overturn the trial court's ruling only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Section 51.095 of the Juvenile Justice Code governs the admissibility of statements made by juveniles. *See* Tex. Fam. Code § 51.095. The statute incorporates the warnings required by *Miranda*, with additional safeguards in place to protect juveniles. *See id.* § 51.095(a)(1); *see also Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966) (requiring demonstration of use of procedural safeguards effective to secure privilege against self-incrimination before evidence obtained as result of custodial interrogation may be used against defendant). Generally, statements made by juveniles are admissible in evidence only if the statement shows that the child has, at some time before making the statement, received the *Miranda*-based statutory warnings.[5] *See* Tex. Fam. Code § 51.095(a)(1)(A), (5)(A). However,

---

[5] Specifically, a magistrate must warn the child that: (i) the child may remain silent and not make any statement at all and that any statement that the child makes may be used in

12

section 51.095 does not preclude the admission of a juvenile's statement if the statement does not stem from custodial interrogation.  *See id.* § 51.095(b), (d); *see also Martinez v. State,* 131 S.W.3d 22, 32 (Tex. App.—San Antonio 2003, no pet.) ("[A] statement which is not the product of custodial interrogation is not required to be suppressed, even when the juvenile does not receive the statutory admonishments.").  In this case, the record demonstrates that appellant did not receive the required statutory admonishments until he was formally taken into custody for DWI.  Thus, the dispositive issue is whether appellant was in custody during his interaction with Officer Vasquez prior to that point—that is, during the time he was questioned by the officer in the ambulance or during the administration of the field sobriety tests.

Appellant argues that he was in custody "from the moment law enforcement arrived on the scene and began questioning him" because Officer Vasquez was conducting a DWI investigation and appellant was not free to leave.  He essentially argues that he was seized and that status, without more, equals custody.  However, what appellant describes—and what the evidence reflects—is an investigative detention, not a custodial detention.

An investigative detention involves a police officer briefly detaining a person reasonably suspected of criminal activity in order to determine his identity or to maintain the *status quo* in order to garner more information to confirm or dispel the officer's suspicions.  *Balentine v. State,* 71 S.W.3d 763, 768–71 (Tex. Crim. App. 2002); *Bartlett v. State*, 249 S.W.3d 658, 667–68 (Tex. App.—Austin 2008, pet. ref'd); *see Berkemer v. McCarty*,

evidence against the child; (ii) the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning; (iii) if the child is unable to employ an attorney, the child has the right to have an attorney appointed to counsel with the child before or during any interviews with peace officers or attorneys representing the state; and (iv) the child has the right to terminate the interview at any time.  *See* Tex. Fam. Code § 51.095(a)(1)(A), (5)(A).

468 U.S. 420, 439 (1984) (holding that police officer whose observations lead him reasonably to suspect that particular person has committed, is committing, or is about to commit crime may detain that person briefly in order to investigate circumstances that provoke suspicion). A person held for an investigative detention is not in "custody." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *Ramirez v. State*, 105 S.W.3d 730, 738–39 (Tex. App.—Austin 2003, no pet.); *see State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008) (explaining that temporary detention, in which person is not free to leave while police officer investigates whether crime has been committed, is not custodial arrest); *Bartlett*, 249 S.W.3d at 668 (recognizing that "a valid investigative detention, which is characterized by lesser restraint than an arrest, does not constitute custody").

Admittedly, an investigative detention may escalate from a noncustodial detention to a custodial detention. *See State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). However, a person is "in custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Dowthitt*, 931 S.W.2d at 254–55; *Houston v. State*, 185 S.W.3d 917, 920 (Tex. App.—Austin 2006, pet. ref'd). The Court of Criminal Appeals has recognized four general situations which may constitute custodial detention absent a formal arrest: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave. *Dowthitt*, 931 S.W.2d at 255. With respect to the first three situations, the restriction upon

14

freedom of movement must amount to the degree associated with a formal arrest as opposed to an investigative detention. *Id.*; *Ramirez*, 105 S.W.3d at 739. As for the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect. *Dowthitt*, 931 S.W.2d at 255; *Ramirez*, 105 S.W.3d at 739.

A determination of custody must be made on an *ad hoc* or case-by-case basis, in consideration of all of the objective circumstances of the detention. *Ortiz*, 382 S.W.3d at 372; *Dowthitt*, 931 S.W.2d at 255. When the detained person involved is a juvenile, courts consider age and all the circumstances surrounding the encounter to decide whether there was a restraint of movement to the degree associated with formal arrest. *In re D.J.C.*, 312 S.W.3d at 712; *In re V.P.*, 55 S.W.3d 25, 31 (Tex. App.—Austin 2001, pet. denied); *see J.D.B. v. North Carolina*, 564 U.S. 261, 275–77 (2011) (holding that juvenile's age must be taken into consideration in "reasonable-person" analysis, so long as child's age is known to officer at time of questioning).

No bright line rule exists to distinguish investigative detentions and custodial arrests (or "custody"). *Sheppard*, 271 S.W.3d at 291. Instead, when called upon to make that determination, Texas courts consider several factors when categorizing the seizure of a person, including the amount of force displayed, the duration of detainment, the efficiency of the investigative process, whether the investigation is conducted at the original location or the person is transported to another location, the officer's expressed intent—that is, whether the officer told the person that he was under arrest or was being detained, and any other relevant factors. *Id.* at 290; *Morales Chavez v. State*, No. 03-17-00637-CR, 2019 WL 2293566, at *7 (Tex. App.—Austin May 30, 2019, no pet.) (mem. op., not designated for publication). In general, "[i]f the degree of incapacitation appears more than necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation, this suggests the detention is an arrest."

15

*Sheppard*, 271 S.W.3d at 291; *accord Morales Chavez*, 2019 WL 2293566, at *7. Conversely, a seizure is an investigative detention rather than an arrest, if, given the totality of the circumstances, "a reasonable person would believe the seizure was to be sufficiently nonintrusive as to be only an 'investigative detention.'"[6] *Sheppard*, 271 S.W.3d at 291 (citing 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 7.34 (2d ed. 2001)); *accord Morales Chavez*, 2019 WL 2293566, at *7.

In this case, the evidence demonstrated that the initial welfare check on a passed-out driver evolved into a DWI investigation of appellant. Officer Vasquez first encountered appellant in the back of the ambulance as he was being evaluated by EMS. The officer told appellant that he was "not in trouble" and expressed that they were "just talking" in order to "figure things out."

During their initial interaction, Officer Vasquez became concerned that appellant was under the influence of alcohol. The officer then acted diligently to pursue a means of investigation that would quickly dispel or confirm his suspicions—through questioning and the administration of field sobriety tests. Officer Vasquez's conduct here was no more intrusive than an officer conducting a DWI investigation during a typical traffic stop. A DWI investigation that includes questioning and field sobriety tests does not, without more, rise to the level of a custodial interrogation. *McRae v. State*, 152 S.W.3d 739, 748–49 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *see Berkemer*, 468 U.S. at 439; *State v. Stevenson*, 958 S.W.2d 824, 828–29 (Tex. Crim. App. 1997). Being the focus of a criminal investigation does not equate to custody. *Meek v. State*, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990) (citing *Beckwith v. United*

---

[6] In the custody analysis, the "reasonable-person" standard presupposes an *innocent* person. *Florida v. Bostick*, 501 U.S. 429, 438 (1991); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).

*States*, 425 U.S. 341, 347 (1976)); *Martinez*, 131 S.W.3d at 32 (same); *see Stevenson*, 958 S.W.2d at 829 (concluding that accident investigation escalated from consensual encounter to investigative detention but mere fact that suspect became focus of criminal DWI investigation did not convert investigation into arrest).

Further, the evidence here reflected that minimal force was displayed during the encounter. Although Officer Vasquez was in uniform and another uniformed officer arrived on the scene to assist, appellant was not, at any point, surrounded by multiple officers. Officers did not use an undue amount of force to hold appellant. Appellant was not handcuffed or physically touched by police until he was formally taken into custody. No weapons were drawn or openly displayed at any time. Appellant was not transported to a separate location but simply moved from the ambulance (after the medical evaluation was completed) to the nearby sidewalk so Office Vasquez could conduct the field sobriety tests. He was placed in the patrol car only after he was formally taken into custody. In addition, as the juvenile court noted, the officer was "conversational, friendly, cooperative, and non-threatening" during his interaction with appellant.

The record before this Court and the juvenile court reflects a valid investigative detention. The fact that appellant was a juvenile did not convert the investigative detention into a custodial situation. *See Dang v. State*, 99 S.W.3d 172, 181 (Tex. App.—Houston [14th Dist.] 2002) (recognizing that "the police may detain a juvenile temporarily during an investigation in the field in the same manner as they detain an adult"), *rev'd on other grounds*, 154 S.W.3d 616 (Tex. Crim. App. 2005).

Based on the totality of the circumstances, we conclude that a reasonable sixteen-year-old would not have believed he was under restraint to the degree associated with a formal

arrest at the time that Officer Vasquez questioned him and conducted the field sobriety tests. *See Dowthitt*, 931 S.W.2d at 255 (explaining that "the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention"). Accordingly, we find that appellant was not in custody when he made his statements to Officer Vasquez. *See State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013) ("The ultimate legal determination of whether an individual was in custody requires an appellate court to take the facts, as assessed for weight and credibility by the trial court, and then to make a legal determination as to whether those facts amount to custody under the law."). Consequently, the juvenile court did not abuse its discretion in denying appellant's motion to suppress and admitting appellant's statements to the officer through either the officer's testimony or the dash-cam recording. We overrule appellant's third point of error.

## CONCLUSION

Having concluded that the evidence is sufficient to support appellant's delinquency adjudication for driving while intoxicated with an alcohol concentration of 0.15 or more and that the juvenile court did not abuse its discretion in denying appellant's motion to suppress and admitting the statements that appellant made to Officer Vasquez, we affirm the juvenile court's judgment of adjudication and order of probation.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Goodwin and Smith

Affirmed

Filed: February 12, 2020

18